### GEORGE W. FOSTER *vs.* LEMUEL BARNEY.

If a note payable on demand be sold, and endorsed in these words, "I warrant the within note due and collectable," it will not be subject to the general rules of law which govern negotiable notes and bills of exchange when transferred and endorsed in the usual way, and the endorsee need not demand payment of the maker, nor give notice to the endorser of the non-payment, as in ordinary cases.

But the endorsee ought to make use of due diligence in proceeding against the maker, and not suffer the note to lie in his hands an unreasonable length of time without putting it in suit. In this case it was held that five or six days was not an unreasonable delay.

In such case the endorsee is not bound to attach the real estate of the maker, nor take it on the execution.

    This was an action of *assumpsit* brought by the endorsee of a promissory note against the endorser. It was originally commenced before a justice of the peace, and came into the county court by appeal. The cause was submitted to that court, ROYCE, J. presiding, on the following stated case, agreed to by the parties :

    " On the 3d day of January, 1827, one *Aiken Lawrence* executed his note to the defendant in the words following :

    " Due *Lemuel Barney*, or order, the sum of thirty two dollars " and seventy two cents, with interest.

                  " Signed, *Aiken Lawrence*."

    On the 26th day of January, 1827, the defendant sold and transferred said note to the plaintiff for a valuable consideration, and at the same time endorsed thereon the following words : ' *I hereby warrant the within note to be due and collectable.*' Within five or six days after the note was thus transferred to the plaintiff, it was sued, and judgement was rendered thereon against *Lawrence* on the 22d day of February, 1827, for $33,00 damages, and $1,39 cost of suit. Execution was issued, dated the

same day, and *Lawrence* thereupon was committed to jail within sixty days from the date of said execution. *Lawrence* afterwards caused legal notice to be served on the defendant of his intention to swear out of jail, and he was accordingly admitted to the poor-debtor's oath, and was discharged from prison. The committing fees were $2,98.

On the day on which judgement was rendered against *Lawrence*, the plaintiff's attorney saw the defendant, and told him the note had been sued ; that *Lawrence* was poor, and might not be able to pay the debt, and suggested to him whether it was not advisable for him to interfere with the suit, and pay the amount of the note to the holder. The defendant declined to interfere at all in the business. After *Lawrence* had sworn out of jail, and before this suit was commenced, the plaintiff's attorney again saw the defendant, and told him that *Lawrence* had sworn out of jail, and requested him to pay the amount of the note and costs made thereon ; which he declined doing.

If the court should be of opinion, on the foregoing statement of facts, that the plaintiff ought to recover, then judgement is to be entered for the plaintiff; otherwise for the defendant."

*Aldis & Davis*, for plaintiff,

*Brown & Whittemore*, for defendant.

On trial of the issue, joined to the court, the following evidence, in addition to the foregoing stated case, was introduced by consent of parties :

That at the time of executing said promissory note, and ever since, the said *Lawrence* resided upon a tract of land worth from two to three hundred dollars, of which he claimed to be the owner, until the 8th day of February, A. D. 1827, when he executed a deed of the same to one *Meigs*—That the plaintiff, the defendant, and *Lawrence*, all resided at the village of *Swanton Falls*, and were neighbours to each other.

Upon the case stated, and the additional facts aforesaid, the court decided the plaintiff was entitled to recover, and gave judgement accordingly.

The defendant excepted to the decision of the court, and the cause was removed to the Supreme Court for a final decision on the questions of law arising on the foregoing facts.

*Brown and Whittemore, for the defendant.*—One of the reasons why the law requires notice to be given to the endorser of the non-payment of a note, is that the person intended to be

FRANKLIN,
January,
1830.

Foster
vs.
Barney.

FRANKLIN,
January,
1830.

Foster
vs.
Barney.

made liable by such notice may have an opportunity of secur-
ing the demand against the maker. *Chit. on Bills*, 93, 97.
The reason of the law applies as strongly to this case as to that
of general endorsements. Before the court dispense with the evi-
dence of notice, they must be satisfied that by the terms of the en-
dorsement the defendant has waived the right. The defendant,
having by the endorsement warranted the note due, has not waived
that right. If he has done so, it must be from his having warranted
the note collectable. The word collectable has no definite techni-
cal signification, and may be applied to any method of collection.
It might imply as well that it would be paid when demanded of the
maker, as that it would be paid after legal process. The warranty,
then, was nothing more than an agreement on the part of the defen-
dant, that the maker of the note was solvent and would pay it. This
conclusion is the same that the law makes from a general endorse-
ment, and, if correct, shows clearly that the defendant was entitled
to notice.

The endorsement did not restrain the negotiabi ity of the note,
and the defendant would have been liable to any subsequent en-
dorsee upon the endorsement made by him. *Kyd on Bills*, 232.
—12 *Mass. Rep.* 14. The liability of the defendant, therefore,
must arise from the operation of the *law merchant as* applicable
to negotiable instruments, and not from the special agreement of
the defendant, as contained in the endorsement itself. If the lia-
bility of the defendant was by law transferable, it is difficult to
see upon what grounds he is deprived of the benefit of the same
law requiring notice of non-payment. There is but one general
rule known in the courts of *Great Britain* with regard to nego-
tiable notes. The endorser is in all cases entitled to notice of the
failure of the maker to pay. The only exceptions known, where
the plaintiff may prove an excuse for not giving notice, are, that
the endorser gave no consideration for the note, and knew the ma-
ker to be insolvent ; that the endorsee was ignorant of the en-
dorser's place of abode ; that the defendant afterwards promised to
pay the bill ; and a promise made to a subsequent endorsee is ev-
idence for this purpose. 2 *Stark. Ev.* 256, 269. It should be
upon strong reasons that the courts introduce a new rule of law,
especially one that might be embarrassing in its effects. For if
immediate notice is not necessary, then notice might be given of
the failure of the maker any time before the statute of limitations
had run, and then an endorsement might rise up to charge the en-
dorser long after he had settled, and closed all dealings with the

maker. The endorsement in the present case did not bind the
endorser to pursue the maker. He might have pursued the de-
fendant immediately on the failure of the maker to pay. But if
it should be contended that the holder was bound to pursue the'ma-
ker, we say he did not use due diligence, inasmuch as six days
elapsed before any suit was commenced, and no judgement
obtained until the 22d day of February, 1827.

All the parties in this case lived within a small distance of each
other : one day would have been a reasonable time. But no de-
mand whatever was made by the holder, and no attempt to make
a demand appears from the case. Should it be answered that
by the terms of the endorsement the plaintiff was bound to pursue
the maker before recourse could be had to the endorser, and that
the commencement of the suit was a sufficient demand, then we say
the law would require the same diligence in commencing and prose-
cuting the suit against the maker, as is required in the demand
of payment from the maker, and notice to the endorser of non-
payment, in case of a general endorsement. If holding the note
six days, in case of a general endorsement, without a demand on
the maker for payment, would by construction of law have been
giving credit to the maker, and the commencement of the suit in
this case is to be taken as an excuse for not making such demand,
then a delay, for the same period, to sue, would, for the same
reasons, be giving credit to the maker, and excuse the endorser.
2 *Bos. and Pull.* 61.—3 *do.* 366.—8 *East. Rep.* 576.

*Aldis & Davis,* for the *plaintiff.*—The general principles of
law which require the endorsee to present the note, and give notice
back to the endorser of the non-payment of the note, do not ap-
ply to a special endorsement like the one in question.

Where the endorser warrants the note due and collectable, as in
this case, he is not liable until a failure has occurred of collecting
the note of the maker by due course of law ; and hence there is no
necessity of making presentment and giving notice back of the
non-payment, as in cases of endorsement in the common form.

The warranty of the goodness of the note is like a warranty of
soundness of any other article sold. If the warranty fails, a lia-
bility accrues. If the note was not collectable, the warranty was
not true, and the defendant is liable.

It does not appear that the debt was lost by want of due dili-
gence on the part of the plaintiff.

FRANKLIN,
January.
1830.

Foster
vs.
Barney.

The opinion of the Court was pronounced by

PADDOCK, J.—The general principles of law which govern negotiable notes and bills of exchange will not apply in this case. It is well understood that upon the presentment and refusal to pay a negotiated promissory note, where recourse may be had back, the endorsee has an immediate right of action against the endorser, upon giving notice of the non-payment : but it cannot be contended in this case that *Barney* was liable to *Foster* at the time he commenced the suit against *Lawrence*. It is apparent from the wording of the endorsement that *Barney* intended to guard himself against such liability ; otherwise,he would have endorsed the note in the usual and ordinary words to effect a transfer. Instead of which we find him saying, "*I hereby warrant the within note due and collectable ;*" leaving it implied with as much certainty as though expressed in terms, that he was not to be liable but in the event that the money could not be collected of *Lawrence*. What else can be understood from the word "*collectable*," but that *Lawrence* should be able to respond the judgement that might be recovered upon the note ? The term presupposes that a suit might be necessary ; and in order to determine whether collectable or not, it became the duty of *Foster* to pray out a writ, and, if the same was not returned *non est inventus*, to pursue the suit to final judgement and execution ; and nothing short of *Lawrence* remaining in jail, or taking the poor debtor's oath, would be a sufficient test. This being done, *Foster* had performed all that he was bound to do by the terms of the contract to entitle him to recover of *Barney* the amount of the note, interest and costs which had necessarily accrued in the suit and commitment, unless he had committed some *laches*.

It is contended by the defendant, there was an unreasonable delay on the part of *Foster* after receiving the note, before he commenced a suit upon it. The argument would have carried more weight with it, if there had been a time of payment appointed in the note, and that time had expired immediately after its transfer. *Barney* might then have said, and with more plausibility, that had the note been in his possession, he should not have waited five or six days without suing it. Yet the note being on demand,it seems, *Barney* had waited from the third to the 26th of January, when it was transferred ; and as it does not appear from the case that there was any time stipulated in which it should be sued, the court are of opinion there was no unreasonable delay. Nor does the circumstance that *Lawrence* had executed a deed of the land

OF THE STATE OF VERMONT.

FRANKLIN,
January.
1830.

Foster
vs.
Barney.

be occupied to *Meigs*, on the 8th day of February, after the case ; for *Foster* was not bound to take real estate in satisfaction of the execution ; therefore, it was not his duty to have attached it on *mesne process.*

The Court are of opinion that the judgement of the county court ought to be affirmed.

Judgement affirmed.

*Aldis & Davis*, for plaintiff.
*Brown & Whittemore*, for defendant.