# WALKER *vs.* T. & G. FORBES.

1. A guaranty, addressed to a mercantile firm, in these words . " Gentlemen, If you can sell Mr. U. any groceries, I am willing to guaranty the ultimate payment of any bill he may make with you, to the amount of $500," is a collateral undertaking to be ultimately responsible for the demand, if the party to whom the groceries are furnished, after the use of all reasonable and proper means of coercing payment, fails to pay : and notice of acceptance, as also of the principal's default, is necessary to charge the guarantor.
2. Notice of acceptance within a reasonable time must be given to the guarantor, except in cases where the agreement to accept is contemporaneous with the guaranty, or constitutes the consideration and basis of it.
3. Where the guaranty is of a demand to be created in future, and the terms of the contract are left at the option of the guarantee and the principal debtor, the guarantor is entitled to notice of the principal's default ; but if the latter is insolvent when the debt falls due, notice is unnecessary, as the guarantor can sustain no injury from the want of it.
4. In assumpsit on a collateral guaranty, in such case, no recovery can be had on the common counts ; and a special count, which does not set out the terms of the contract between the guarantee and the principal debtor, is fatally defective on demurrer.
5. The fact of insolvency cannot be proved by hearsay evidence.
6. Sureties, endorsers and guarantors are liable according to the law of the place of their contract.
7. Sections 3014, 3015 and 3016 of the Civil Code of Louisiana apply to ordinary contracts of suretyship, or simple guaranties, but not to cases where the terms of the contract expressly provide or necessarily imply a diligence on the part of the creditor beyond that required by them.
8. A draft drawn by the principal debtor on the guarantor for the amount of the debt, but not accepted by the latter, does not in any way affect the relations of the parties on the original demand, when it does not appear to have been received in payment.
9. The statement of the principal debtor, made during the pendency of the negotiation for the goods, "that he had been unfortunate and was without means," is admissible evidence against the guarantor, in a suit on the guaranty, as tending to show that the credit was given to him.

ERROR to the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

ASSUMPSIT by T. & G. Forbes against Daniel Walker, on a guaranty, for a copy of which see the opinion of the court.— The declaration, in addition to the common money counts, contained four special counts. The first special count alleges,

substantially, that Walker promised to be ultimately respon-
sible for groceries furnished by plaintiffs, under the guaranty,
to one Cogburn; that Cogburn has wholly failed to pay;
that he is a non-resident of the State of Louisiana, where the
guaranty is alleged to have been made; and that he has no
property in that State out of which payment can be coerced;
"of all which said premises, the said defendant, afterwards,
&c., then and there had notice." The second alleges, that
Walker guarantied the ultimate payment of the demand;
that plaintiffs have diligently sought payment from Cogburn,
but he is insolvent, and plaintiffs have been and are unable to
collect; of which said premises, &c., defendant then and there
had notice. The third sets out the guaranty *in hæc verba*, and
avers that plaintiffs diligently sought to collect, but Cogburn
was a non-resident of Louisiana, and was and is insolvent; of
which premises, &c., defendant had notice. The fourth avers,
that the defendant became accountable for the ultimate pay-
ment of the debt, and that Cogburn has not paid; of which
premises, &c., defendant had notice. A demurrer was inter-
posed to each count, but was overruled.

The plaintiffs offered in evidence the deposition of Richard
Deming, who proved, the sale and delivery of the goods to
Cogburn; "that Messrs. Forbes declined selling any goods
to him on his own responsibility, but said they knew Mr.
Walker, and that his credit was good, or words to that effect;
that Cogburn afterwards came into their store again, with
Mr. Walker's letter (the guaranty) in his hand, and delivered
it to the plaintiffs; that upon this the goods were sold, and
delivered to Cogburn, on Walker's credit; that the propriety
of making the sale was discussed by plaintiffs in the presence
of witness, and the conclusion was that there was no danger
in selling upon Walker's guaranty, as he was known to be
solvent; that the sale was made after the delivery of the
note, a few minutes after its delivery, on the same day." He
further testified as follows: "Cogburn has no property in
Louisiana, to my knowledge; I have made many inquiries,
but have been unable to find any; *he has usually been represen-
ted by his neighbors as insolvent;* payment of the bill has been
frequently demanded of him, but no payment has been made."
His answer to the second cross interrogatory is as follows:
"I do not know anything of Mr. Cogburn's pecuniary means,

except what I learned from him at the time the purchase was made, and his general reputation for solvency among his neighbors; *when he was making the purchase, he stated to plaintiffs, in my presence, that he had been unfortunate and was without means,* and that Mr. Walker proposed to aid him in beginning business." The defendant objected to those portions of the deposition which are italicized; but his objections were overruled, and he excepted.

The plaintiffs also introduced evidence to show that, at the time the guaranty was given and the goods furnished, the defendant was a citizen of Alabama, while Cogburn was a citizen of Arkansas. They also offered in evidence a draft drawn by said Cogburn on the defendant, for the amount of the account for which the suit was brought, with a protest for its non-acceptance; and the notary himself testified, that he had presented the draft to the defendant on the day specified in the protest. Defendant objected to the introduction of this draft and protest; but his objection was overruled, and he excepted. In connection with the draft and protest, plaintiffs also offered in evidence a letter written to them by defendant, " which was read to the jury without exception so far as the letter itself was concerned." The letter is as follows:

" GENTS : Some three days ago I was presented with a draft, drawn in your favor, by J. M. Cogburn, for acceptance ; which, as might have been presumed, I refused. I am as much surprised, under the circumstances, at your taking a draft in that case, as I am at his giving it. It is true, you hold my guaranty for the *ultimate* payment of a sum of money not exceeding the amount specified, which makes the debt certain to you, if I am good, and Cogburn should turn out otherwise ; but, until that is the case, it imposes no responsibility on me. But, to obviate all difficulty, you will find Mr. Cogburn a trustworthy man, and will get your money in good time."

It was admitted on the part of the defendant, that one of plaintiffs' attorneys had called on him some two or three weeks before this suit was brought, demanded payment, and notified him that, unless paid, suit would be brought. The plaintiffs then offered in evidence sections 3014, 3015 and 3016 of the

Civil Code of Louisiana, for the purpose of showing the law of that State in relation to such contracts as that upon which this suit was brought.

This being substantially all the evidence offered by the plaintiffs, and the defendant offering none, the court charged the jury, that they must find for the plaintiffs, if they believed their evidence. The errors assigned are, first, the overruling of the demurrers to the declaration; second, the several decisions made by the court upon the evidence; and, third, the charge of the court.

GEO. N. STEWART, for the plaintiff in error:

The guaranty was for the *ultimate* payment of the debt.— The first question is, what is the true construction of this obligation? We admit, that in ordinary cases, where a party guaranties the payment of a debt, a demand and notice are sufficient, and the creditor is not bound to sue to insolvency. We contend, however, that in this case, the word "ultimate" means as a last resort—upon a return of "no property found." It is not pretended any suit was ever commenced against Cogburn; nor is, in fact, any demand of him proved; nor is his insolvency even proved, though that would not have been sufficient.

The next objection is, that there was no notice given to Walker of the acceptance of his guaranty, and that he was looked to. This notice is indispensable, as the guaranty is of that class which are prospective, and which do not operate *per se* as absolute obligations.—10 Peters 482; 12 *ib.* 207, 497; 2 Ala. 373; 4 Howard's Miss. 231; 7 Peters 125; Chitty on Con. 436 *a*, note; Story on Con. 727, 748. In all cases, diligence by the creditor must be shown, according to the nature of the obligation. Where suit is necessary, it must be shown to have been prosecuted; where demand merely, that must be shown, and notice to guarantor of non-payment.—19 Johns. 69; 7 Peters 126-7; 3 Wheaton 154, note.

In this case, the terms of the contract made between Forbes and Cogburn are concealed and withheld, both by the pleading and the proof. It seems, credit was given—this is presumed; but how was the debt to be paid? when was it to be paid? and where was it to be paid? These are questions which are

not answered, either by the pleadings or the proof. Were the terms lawful, reasonable, customary, within the terms of the guaranty, or not? We cannot tell. Therefore, when a demand of payment is spoken of, we cannot tell if the demand was a lawful one—that is to say, one that Cogburn was bound by the terms of his contract to comply with. If this is not shown (and it is not), no breach by Cogburn appears, and consequently no liability in Walker. Was it a term of the contract, that Cogburn should, when applied to for payment, give a draft on Walker at four months, payable at Mobile? We are authorized to suppose it was, because we see such a draft, and no agreement to the contrary is proved. If this be so, then the goods were not sold on the faith of the guaranty—that is, the sale is not covered by it, nor within its terms. Its terms were not that goods were to be sold, and Walker drawn on for the payment of them. He was not to be primarily liable, but only ultimately liable. We have the right to assume, we say, that such was the terms of the agreement for the sale of the goods, for we find it so acted on by the parties; and in that case, they cannot look to the guaranty.

But suppose the agreement did not, in the first instance, provide that the goods should be paid for by such draft, but that the debtor Cogburn should have paid for them, when demanded at the time of the date of the draft; and that, instead of paying for them as he should have done, he gave the draft, and that Forbes accepted this draft instead of payment: then, if so, another objection arises, equally fatal to the plaintiffs. The contract was changed; the place of payment was altered; the time of payment changed; time given and extended; and mode of payment changed. This discharges the guarantor; any change discharges him, even when made apparently for his benefit.—Chitty on Cont. 461; 3 Wheat. 155; Story on Cont. § 870, p. 745.

The law of Louisiana is cited by the appellees' counsel; they say, the contract was made in Louisiana. We answer, it was not to be performed in Louisiana; payment was not to be demanded in Louisiana. It was to be demanded, and was applied for, they say, in Arkansas. The record expressly shows, that Cogburn lived in Arkansas; the goods were

shipped in New Orleans, and delivered to him in Arkansas; payment claimed there, and demanded of Walker in Alabama, where he resided. The code of Louisiana, therefore, has nothing to do with it. Besides, the code applies to general contracts; this is a special one, requiring the principal debtor to be prosecuted to judgment and "no property found," by the terms of the contract itself. Again; the law of Louisiana, in the same chapter, expressly provides, that where time is extended, the surety is discharged; the acceptance of the draft at four months discharges Walker under the code of Louisiana.—See Code Lou., 2d art., 3031, 3032. As to what is meant by discussion, see art. 3366.

The court erred in not sustaining the objections to the parts of the deposition excepted to. They were not competent proof of insolvency of Cogburn, to charge Walker on that ground.

The court charged the jury, that if they believed the proof of the plaintiffs, they must find for the plaintiffs. This was wrong, for two reasons: First—all the proof is not sufficient, in point of law, for the reasons above stated; it does not come up to the requisites of the law, and shows Walker to be discharged. Secondly—it misleads the jury, and takes the responsibility of all the assertions of the witnesses, without separating that which is proper from that which is founded on hearsay and suppositions. The witness Deming is cross-examined, and it is shown he testifies to things he knows nothing about. The charge tells the jury, If this is true, you must find, &c.; but that evidence was not sufficient to authorize them to find a demand, and that fact was necessary. So the court misled the jury, and charged them wrongfully. There was really no demand of payment of Cogburn proved. The proof was only available so far as it proved facts alleged; beyond the allegations of the declaration, it was wrong to find any fact on it; but the charge made the whole available, whether within the *allegata* or not. The proof, of course, could have no application to the common count; no recovery could be had on that in such a case.—7 Peters 118.

The counts in the declaration were demurred to severally, and the demurrer to each of the four counts was overruled. If any one count was insufficient, the judgment must be re-

versed ; but not one of them is good, and neither one contains all the allegations, properly pleaded, sufficient to support the judgment and make Walker liable. 1. They show goods were sold on credit, but the terms are not set forth. The court cannot judge if the credit was reasonable or proper, nor when the debt was to be paid, nor where, nor by what law it was to be governed, nor where performed. We do not know if the debt be past due or not, nor whether Walker was to be applied to in the first instance for payment, as afterwards assumed. True, they aver that the time of credit had expired, but that is but the conclusion of the pleader ; the facts are not shown. 2. These counts contain no sufficient allegation that notice was given to Walker of the acceptance of his guaranty, nor that it was acted on, nor of the terms of credit they had given to Cogburn. 3. No special demand is made of payment from Cogburn, with time and place ; nor does it appear it was such a demand as Cogburn was bound to comply with, nor warranted by his agreement with plaintiffs.—2 Stewart 373. 4. No notice is specially averred to Walker, within a reasonable time of the demand, and refusal of Cogburn to pay. 5. There is no averment that any suit was brought against Cogburn for the recovery of the debt. 6. There is no sufficient averment of diligence by the creditor to obtain payment ; diligence is averred in some counts, but the facts relied on are not. A mere assertion is made, and conclusions of the pleader merely, but the facts constituting it are not set forth. Each of the counts, when closely examined, will be found deficient in one or more of the above requisites, and neither shows a sufficient liability in Walker.

P. HAMILTON, *contra:*

1. The contract, having been made in New Orleans, must be governed by the laws of Louisiana.—1 Ala. 527; 1 How. (U. S.) 169. The law of Louisiana is to be found in the Civil Code, arts. 3014, 3015, 3016.

2. A guarantor is a surety, with such conditions as may be made ; in this case, for ultimate payment. Defendant guaranties the collection of the debt (13 Wend. 543), and on this guaranty, at most, insolvency, or non-residence of the party guarantied, with no property in the State, is sufficient to

charge.—Code Lou. 3015-16 ; 9 Martin's R. 385. On insol-
vency, the right to discuss debtor's property ceases (4 Lou. R.
7), and can be obtained only on a plea and tender of expenses
(5 Martin's R. 674, 366 ; 6 *ib.* 562 ; 9 *ib.* 385) ; so that the
effect of this guaranty is an absolute promise to pay.

3. Cases where terms "ultimate accountability" and "final
payment" construed.—6 Greenl. R. 60 ; 20 Maine R. 28 ; 4
Greenl. R. 521 ; 2 Barb. R. 51. It is the business of guar-
antor to see that principal pays ; and no notice is necessary,
if guarantee sustain no loss by want of notice.—Authorities
*supra;* 22 Ala. 659 ; and decision by Judge Goldthwaite at
this term. Notice and demand, at any time before trial, is
sufficient.—12 Pick. 133, 416.

4. A suit against the principal is not necessary, unless re-
quired by the terms of the contract.—11 Wend. 100 ; 17 *ib.* 103.

5. On the facts : The goods and contract of guaranty were
contemporaneous. No notice of acceptance of guaranty re-
quired.—24 Wend. 82 ; 2 McLean 21 ; 1 Story 22.

CHILTON, C. J.—This action is upon a guaranty in the
following words : "Messrs. T. & G. Forbes—Gentlemen : If
you can sell Mr. J. M. Cogburn any groceries, I am willing
to guaranty the ultimate payment of any bill he may make
with you, to the amount of five hundred dollars. Yours re-
spectfully, (signed) D. Walker, (dated) New Orleans, April
10th, 1850." The ascertainment of the legal effect of this
instrument, will enable us better to determine the questions
raised upon the judgment overruling the demurrers to the
four special counts in the plaintiffs' declaration.

It is certainly not an absolute undertaking to be primarily
responsible for the demand; but to see it ultimately paid—that
is, after the plaintiffs had used all means in their power, which
were reasonable and proper, to coerce payment out of Cog-
burn, who was understood to be the party primarily liable.—
If they have failed to do this, or to show that the use of such
means would have been unavailing, by reason of his insol-
vency or from some other cause, they cannot recover. Any
other construction would, we think, make the guaranty read
as though the word "ultimate" had been omitted, and would
do violence to the intention of the parties. It is, in effect, a

guaranty of the goodness of the demand. The principle upon which the cases of Lewis v. Hoblitgill's Adm'r, 6 Gill & John. 259, Johnson v. Chapman, 3 Penn. 18, Foster v. Barney, 3 Verm. 60, Rudy v. Wolf, 16 Serg. & Rawle 69, and Nesbit v. Bradford, 6 Ala. 746, were decided, fully covers this case; see, also, Story on Contracts, § 871 a, and cases cited by him, n. 1.

Again; Walker is willing to guaranty the ultimate payment if the plaintiffs will sell groceries to Cogburn. Here was a proposal to become ultimately bound, requiring an acceptance on the part of the plaintiffs before it could be said to be a consummated contract. It is well settled, that in such case the guarantor is entitled to notice of the acceptance of his order in order to bind him; for he has a right to know whether the persons to whom the letter is addressed intend to look to him ultimately for payment, and of the extent of his liability and the terms of the contract.—Edmundson v. Drake, 5 Peters 624; Douglass v. Reynolds, 7 *ib.* 113; Lee v. Dick, 10 *ib.* 482; 12 *ib.* 497; Wildes v. Savage, 1 Story's Rep. 32; Lawson v. Towns, 2 Ala. 373; Story on Con., § 873. This information is necessary to enable the guarantor to provide for his safety and indemnity as against his principal. Besides, he has the right, where the contract of guaranty does not determine the character and extent of his responsibility, but these are left at the option of the creditor, to know in what manner that option has been exercised, so as to enable him to fulfil his engagement.—See 2 Amer. Leading Cases, p. 81, and Henning's Case, Cro. Jac. 432.

It is supposed by some of the courts, that this notice must be given immediately upon the acceptance of the guaranty; but we think the better opinion, and that more consonant with reason, is that the notice of acceptance should be given in a reasonable time. But this doctrine is inapplicable to cases where the agreement to accept is cotemporaneous with the guaranty, or when it constitutes the consideration and basis thereof. So, if in the case before us the plaintiffs refused to credit Cogburn, and he thereupon agreed to give them, as security for his bill to be made with them, the guaranty of Walker, who, in consideration of their promise to accept it and sell the goods upon the faith of it, executed and

delivered it, or caused it to be delivered to the plaintiffs, the parties all being in the same city, and the information as to the amount of groceries sold and the terms of credit being accessible to all, we do not think any further notice of the acceptance and action upon the guaranty by the plaintiffs was necessary to charge the guarantor. It was his business to have ascertained the amount and extent of his liability for himself, which he could have done upon inquiry. The whole arrangement having been concluded at the same time, notice of acceptance is implied by the assent of plaintiffs to the guarantor's offer.—Howe v. Nickels, 22 Maine 175 ; Wildes v. Savage, 1 Story 22.

But it is insisted, that notice of the default of the principal must be given to the guarantor before he can be held answerable. The rule, in such cases as this, requires that reasonable notice should be given. The doctrine asserted in Donley v. Camp, 22 Ala. 659, does not apply to cases like the present. That was the guaranty of a specific, existing demand ; but here no demand existed at the time : it was to be created in future, and the terms of the contract and the amount to be paid within the limit specified in the guaranty, were left at the option of the guarantee and principal debtor.

If, however, notice has not been given, it does not necessarily follow that Walker is discharged. If Cogburn was insolvent when the debt fell due, and he has sustained no injury from want of notice, his liability remains unaffected by the failure to notify him of the default. If he has sustained an injury for want of such notice, he is released to the extent of that injury. This seems to be the rule deducible from the current of the authorities both English and American.—See them collated in the notes of Messrs. Hare & Wallace, in 2 American Leading Cases, pp. 54 to 98, and a perspicuous and able commentary upon them by those gentlemen.

We have thus far treated this guaranty as though it were to be governed by the laws of this State in which the remedy is sought. It is suggested, however, that it was made in New Orleans, to be executed and consummated in Louisiana, and must be governed by the laws in force in that State, which entered into and formed a part of the contract, We will presently discuss it in this aspect.

Upon a slight inspection of the four special counts, it is very clear that each of them is insufficient, in this, that they fail to set out the terms of the contract between the plaintiffs and Cogburn. Credit was given to him for a specified sum: but we are not advised by the counts as to how, or when the debt was to be paid, so that we cannot determine whether the terms agreed upon were lawful or within the scope of the guaranty. Failing to aver the terms of the contract, the allegation that Cogburn has made default, is but a conclusion of the pleader, and not an averment of a fact upon notice of which the liability of the guarantor is to attach. It is an elementary rule, that the pleader must aver every fact of which the court will not judicially take notice, which is necessary to entitle him to recover, and that it is not sufficient to allege mere conclusions.—1 Chitty's Pl. 214. The declaration is, therefore, bad, and the court erred in overruling the demurrer to the special counts. We are aware, that the form here pursued accords substantially with that given by Mr. Chitty, but the English doctrine is different from our own, as respects notice in such cases. His form, adapted to the English rule, which does not require such notice, is substantially defective with us, in cases where, as we have shown, the guarantor is entitled to notice of the acceptance of the guaranty, and the amount and term of credit extended to the third party under it. As to the common counts, we may lay them out of view, as it is not pretended that upon this collateral agreement any recovery could be had under them.—Douglass et al. v. Reynolds, 7 Peters 113.

The court below also committed an error, in permitting hearsay evidence to establish the insolvency of Cogburn. After the fact of insolvency is established, such proof is sometimes received to show the notoriety of it, as conducing to bring knowledge of it to particular persons who may be affected thereby ; but it has never been allowed as evidence to prove the fact itself. The farthest the courts have gone, is to allow proof by reputation of facts from which insolvency may be inferred, but not reputation of insolvency, since that is a legal conclusion from facts.—Lawson v. Orear, 7 Ala. 784-788.

We come next briefly to consider the case under the facts as disclosed by the bill of exceptions.

The guaranty was given in the city of New Orleans, and

the plaintiffs were merchants residing there. The guarantor resided in this State, and Cogburn, the principal debtor, in Arkansas. The goods were shipped on the vessel of which the guarantor was captain, and delivered to Cogburn in the State of his residence. It thus appears that the contract of guaranty was consummated in the State of Louisiana, and there is nothing apparent from the face of it, or by the oral proof, to show that the payment was to be made, or the execution of it was to be had, elsewhere. Under these circumstances it is clear, we think, that the general rule must apply, that sureties, endorsers and guarantors are liable according to the law of the place of their contract.—Story's Conflict of Laws, p. 223, § 266; Story on Bills, §§ 397, 399, 177 and notes; Chitty on Bills, 661–881; Lowry's Adm'r v. The Western Bank of Georgia, 7 Ala. 120; King v. Harman's Heirs, 6 La. 607; Dunn v. Adams, Parminter & Co., 1 *ib.* 527; Bell v. Brewer, 1 How. U. S. 169.

Upon examining the provisions of the Civil Code of Louisiana, to which we are referred by the record, we are not, however, prepared to hold that they apply to a contract like the present. Section 3014 defines the obligation of the surety towards the creditor to be, to satisfy the debt if the debtor does not, and prescribes that the property of the debtor is to be previously discussed or seized, unless the surety should have renounced the plea of discussion, or should be bound *in solido* jointly with the debtor. By section 3015, the creditor is not bound to discuss the principal debtor's property, unless required to do so by the surety on the institution of proceedings against the latter; and the next section (3016) provides, that if the surety requires discussion, he is bound to point out property of the principal debtor, and furnish a sufficient sum to have the discussion carried into effect; this property must not be out of the State, nor in litigation, nor out of the possession of the debtor under a mortgage.

These sections, we think, apply to ordinary contracts of suretyship, or simple guaranties; but not to cases where the terms of the contract expressly provide, or necessarily imply, a diligence on the part of the creditor beyond that required by them. The contract of the parties, if lawful, must be carried out; and we have seen that the meaning of this engage-

ment is, that the creditor will use all lawful and proper means to collect the demand of the debtor where he resides, or show that the use of such means would have been fruitless. As, therefore, in order to fix the liability of the guarantor, the contract contemplated the exercise of diligence, and the pursuit of legal remedies, if need be, without the State of Louisiana, the doctrine of discussion could not have been applied, we apprehend, even had the action been brought in Louisiana. The case, we think, would not, and does not, fall within the influence of these provisions.

As to the draft taken by the plaintiffs of Cogburn on Walker, which he refused to accept, being for this bill of goods, and remaining unpaid, we do not perceive how it can affect the relation of the parties in respect of the original demand. It does not appear to have been received in payment, and cannot therefore have the effect of discharging the guarantor.

The statement made by Cogburn, as deposed to by the witness Deming, viz., " that he had been unfortunate and was without means," was properly received in evidence. It was made pending the negotiation for the goods, and tended to show a material fact, namely, that the credit was given to Walker and not to Cogburn.

Neither do we think there was any error in allowing the draft and protest to be given in evidence, in connection with the letter of Walker, which relates to them, and the evidence of the notary. They served to show that Walker was advised that his letter of guaranty had been acted upon, and of the amount of the credit given to Cogburn, as also, that he *then* considered himself *ultimately* bound for the demand due from Cogburn.

The charge, however, was not warranted by the proof, as it failed to show Cogburn's insolvency ; and as there was no proof of any legal proceedings against the debtor, nor any agreement waiving such diligence, it must be shown that such diligence would have been fruitless, or a recovery cannot be had.

For these errors, the judgment of the City Court is reversed, and the cause must be remanded.