38 So.2d 586
### MOORER v. TENSAW LAND & TIMBER CO., Inc.
#### 1 Div. 312.

Supreme Court of Alabama.
Jan. 13, 1949.

Rehearing Denied Feb. 17, 1949.

Gaillard & Gaillard, of Mobile, for appellee.

Caffey, Gallalee & Caffey, of Mobile, for appellant.

SIMPSON, Justice.

It was held in Moorer v. Tensaw Land & Timber Co., 246 Ala. 223, 20 So.2d 105, where the instant parties were in litigation over the same subject matter, that the deed executed by Everett & Boykin to Taylor, Lowenstein & Co., under date of February 25, 1922, and the contemporaneously executed written contract between the parties stipulating that the deed was executed as security for certain indebtedness therein described constituted a mortgage on the lands embraced in the deed in the hands of Taylor, Lowenstein & Co. and anyone standing in their shoes.

Taylor, Lowenstein & Co., on February 3, 1941, conveyed by quitclaim deed the said lands to appellant, Moorer, who on January 8, 1945, filed this suit to declare the instruments a mortgage and to foreclose. Several defenses were asserted but the plea of payment, we think, was satisfactorily established, justifying the decree of the lower court in dismissing the bill, as we will undertake to show. Discussion, therefore, will be limited to this single phase of the case.

The partnership of Everett & Boykin for many years prior to 1935 was a producer of naval stores and lumber in several southwest Alabama counties and, in the transaction of such business, was dependent on Taylor, Lowenstein & Co. (referred to as company), merchants and wholesale dealers in naval stores, for advances of money and supplies for these purposes. This business between the parties gave rise to the execution of the deed-mortgage considered in the first Moorer Case, supra, for which this suit seeks foreclosure. The amount due Taylor, Lowenstein & Co. on February 25, 1922, under and by virtue of any notes, contracts or agreements of the partnership then in effect, when the mortgage was given, was $54,743.36, as shown by the books of both the Company and the partnership. The defense of payment, here considered, was rested on the contention that the mortgage (expressed in the contemporaneous written contract) only secured that debt and that, being antecedent to subsequent advances to the partnership, it was thereafter paid by subsequently delivered naval stores and proceeds from timber and land sales years before appellant received his quitclaim deed in 1941.

We think the contract, interpreted in connection with the course of dealings and conduct of the parties throughout the many years, fully sustains such a construction and are advised in briefs that such was the trial court's view of the case.

The appellant, on the other hand, contends that the deed-mortgage is still in fieri and unpaid; that the mortgage was intended to secure not only indebtedness of the partnership under then existing contracts, but also subsequently accruing indebtedness arising from future advances made by the company to the partnership. We must reject this view.

The mortgage feature of the documents, here pertinent on the question of the character of debt secured, is stated in the contract and shows plainly to our minds that it was contemplated to secure the then existing obligations of the partnership, that is, debts due and to become due under then existing notes and contracts; and so limited, secured only the $54,743.36 due when the documents were executed. This interpretation was also borne out by the testimony of the former partner, Mr. Boykin, and the partnership's head bookkeeper and office manager at that time, Mr. Lucas, neither of whom appears to have had any interest in the instant litigation. Such interpretation seems to have been assumed by Taylor, Lowenstein & Co.—as evidenced, total non-action under the instruments —and is also extractable from the specific language of the contract which, after the preamble, expresses the agreement as follows:

"It is therefore, understood and agreed between the parties hereto, that said conveyance [deed dated February 25, 1922] this day made to party of the first part by parties of the second part, is for the purpose of securing any indebtedness now due party of the first part by parties of the second part, or that may become due in future, *under and by virtue of any notes, contracts or agreements now in effect between the parties hereto."* (Emphasis supplied)

Boiled down, the salient facts are: Taylor, Lowenstein & Co. kept on its ledger a general running account against the partnership of Everett and Boykin dating as far back as June 30, 1918, which was continued until June 13, 1927, when Everett died, and thereafter during the operation of the business by Boykin, the surviving partner and executor of the estate of Everett, until as late as June 30, 1935, about which time the business between them seems to have come to an end. Everett & Boykin kept a similar account on their ledger based on statements periodically received by them from the company. In the operation of their business of selling lands and timber and producing naval stores, Everett & Boy-

kin would, as sales were made and stores produced, deliver the proceeds from such sales and the garnered naval stores to the company, which would enter the credits on the running account, the products received being credited at the market quotations as of the date received. We are unable to determine in many instances whether the entries on the running account kept by Taylor, Lowenstein & Co. for sales made were accruals from lumber, timber or naval stores. And in like manner the debits against Everett & Boykin on the running account give no clue as to the character of advances made, whether supplies furnished or monies advanced. The account is voluminous and undoubtedly shows that as advances were made by the company they were entered as debits thereon and as payments were made to the company in money and stores delivered, these items were credited on the account generally. No special application of payments to any particular item of debt or class of debts was made nor was there any earmarking or segregation or specification of any particular debit charge or class of debit charges. As creditor, the company could have elected to have applied the credits in the manner desired if seasonably exercised. But it did not do so. A careful study of the case convinces us that what the company apparently elected to do was to submerge the various items of debit, including that part of the general running account secured by the mortgage, into one common debt represented by the sum total shown to be due by the running account, applying generally the credits of money paid and stores delivered by Everett & Boykin to this general running account.

The character of account kept by Taylor, Lowenstein & Co., and the sum of its effect on appellant's case as we view it, is very aptly described in the brief of appellee:

" * * * this general running account was the funnel through which was channelled most of both the advances to and receipts from Everett & Boykin, in one indiscriminate stream. If Taylor, Lowenstein & Co. had wanted to segregate, or keep a separate account of the purpose for which each different advance was made, or the source from which each different credit

came, *they could have done so*—but the account is indisputable evidence that they did not do so and did not *intend* to do so, and 23 years of inaction closes the door to any effort to do so by this appellant. * * *"

■ The general rule applicable to a running account such as appears to have been struck and carried on between these two firms is, that all credits are to be applied to the payment of each successive item of debt according to its seniority date. This has long been the settled rule in Alabama, in line with that declared in other jurisdictions, and is thus epitomized in the headnote of the early case of Harrison & Robinson v. Johnston, 27 Ala. 445:

"1. Application by law of payment on running account.—When there is a running account between debtor and creditor, a general payment, in the absence of any application by the parties, and where the character of the dealings or other circumstances do not show a different intention, will be applied by law to the charges in the order of time in which they accrued, without reference to the fact that one item may be better secured than another; since the particular parts, being blended together in one common account, having no longer any separate existence, and the balance only is considered as due."

This principle of law has been reaffirmed in many of our later decisions and a case of much similarity in fact to the one at bar illustrating the rule is Mayer Bros v. Gewin, 200 Ala. 391, 76 So. 307, where the holding was:

"Where one general account existed between debtors and creditors before execution of a mortgage by the debtors to the creditors, and such account continued after execution of the mortgage without any change in any manner, * * * a payment made by the mortgagors extinguished the oldest debt, the one secured by the mortgage; the presumption of law that the credit was to be applied, most beneficially to the creditor, to the most precarious debt, having no application." (Syllabus.)

The case of Harrison & Robinson v. Johnston, supra, in discussing the rule, pointed out that the law makes this application "on the principle, that such an ap-

propriation is most consonant to the intention of the parties. Where the factor, from time to time, makes advances, receives payments, and blends the debts and the credits together in one common account, then the parts have no longer any separate existence, but it is the balance only which is considered as due." 27 Ala. at pages 453, 454.

We cannot agree with learned counsel opposing this view that in enunciating such a principle "our Supreme Court has applied an illogical exception to the general rule." The rule in this jurisdiction is in line with that generally obtaining elsewhere and seemingly was first declared by the equity courts of England. See 48 C.J. 657, § 111; 40 Am.Jur. 810, § 137; Harrison & Robinson v. Johnston, supra, 27 Ala. at page 453, citing Clayton's Case, 1 Mer. 608; Bodenham v. Purchas, 2 B. & A. 39; Brooke v. Enderby, 2 Brod. & Bing. 70; Story's Eq. § 459 g.

■ True, where a debtor owes to the creditor more debts than one and neither the creditor nor the debtor expresses any election as to which separate debt the payment is to be applied, "then, as between such debts, the presumption of the law is that the credit is applied most beneficially to the creditor; that is, to the most precarious debt, or the one least secured." McCurdy v. Middleton, 82 Ala. 131, 137, 2 So. 721, 724.

We are of the opinion, however, that this rule, last above, is without application in the instant case. In view of the status of the account carried between the parties, we entertain the view that what was said in the Mayer Bros. v. Gewin case, supra, 200 Ala. at pages 392, 393, 76 So. at page 308, is directly applicable here:

" * * * Here, there is one general account existing before the execution of the mortgage, and continuing thereafter without change in any manner; * * *

"In the instant case there was only one account, a general running account, that secured by the mortgage and that which was an open account being blended into the one indebtedness, and extending from a time prior to the execution of the mortgage to some several years thereafter. There

was no pretense that Mayer Bros. ever applied the payments made to any particular indebtedness, and, indeed, we think the testimony for the appellants clearly discloses that they treated the same as one account and so considered it.

"There is nothing, therefore, in this record which, in our opinion, takes the case from without the influence of the principle announced in Harrison & Robertson v. Johnston, supra. With the payments so applied, there can be no dispute that the mortgage debt was paid prior to the filing of the bill. * * * *"

Since, therefore, the mortgage security operated only to assure payment of such indebtedness as was existing when the documents were executed or that may have arisen in the future under then existing contracts, and since only the indebtedness by those terms was the $54,743.36 debt (due February 25, 1922, when the instruments were executed), the law applying the payments made on the running account to this debt as the oldest item of the account, the debt was fully paid years before appellant received his quitclaim deed.

Counsel for appellant argue with much cogency that since the rule is said to be inapplicable where the proven circumstances show that the intent of the parties or the justice and equity of the case indicate that another rule should be controlling (McCord v. Bridges, 209 Ala. 529, 530, 96 So. 432; Stickney v. Moore, 108 Ala. 590, 19 So. 76) the running account rule should not be here applied.

■ The court, however, takes the view that this case well illustrates the applicability of the announced rule and that its application here is not only consonant with justice and equity, but is not inconsonant with the manifest intention of the parties as gathered from the proven circumstances and manner of their course of dealing. Everett & Boykin and their successors in title, respectively, were, are now, and have been throughout, the exclusive possessors of the land and have assessed and paid the taxes thereon. The contemporaneous written contract containing the mortgage feature was never recorded and so far as the

evidence discloses Taylor, Lowenstein & Co. never sought to exercise any rights of foreclosure under it nor otherwise asserted any rights of mortgagee over the property. The company never declared a forfeiture thereof or in any way asserted any possessory rights thereunder, but apparently treated the mortgage and the application of the payments thereon as did Everett & Boykin, in which case, as testified to by Frank Boykin and Alphonse Lucas, the mortgage debt was paid years before the termination of their business dealings with the company. So far as the evidence discloses, no default was ever asserted under the contract until about twenty-three years after its execution when the appellant, who was charged with notice of the status of the transaction (Moorer v. Tensaw Land & Timber Co., supra, 246 Ala. 226[1] 20 So. 2d 105), began to claim such right under his quitclaim deed. We think the evidence strongly supports the contention that the secured debt has been paid and was so considered by the respective parties to the transaction.

So without considering the other defenses interposed in the case or the alleged effect of non-compliance with the provisions of § 174, Title 47, Code 1940, on the rights of the parties, we hold the decree of the court well sustained on the theory discussed.

Affirmed.

BROWN, LIVINGSTON, and STAKELY, JJ., concur.