This is an action on a contract.
The plaintiff sued defendant on a contract of guaranty. After an ore tenus hearing, the trial court entered judgment for the plaintiff in the amount of $4,500. Plaintiff appeals.
The dispositive issue on appeal is whether the trial court erred in determining that defendant was not plaintiff's guarantor. We hold that it did and reverse.
The record reveals the following: Plaintiff is in the business of manufacturing and selling chicken feed. The defendant is a financial institution which makes agricultural loans to farmers.
In 1974, defendant became a creditor of one Douglas M. Smith, an individual who owned and operated a chicken farm. Smith's income was derived from the sale of eggs.
In February, 1976, Smith, although in serious financial difficulty with defendant, applied for and received an additional loan of $166,168 from defendant. The loan was to finance an expanded hen laying operation of 70,000 birds. Defendant took a security interest in Smith's birds to secure the loan. In addition, and although it does not do so in the ordinary course of business, defendant took active control and management *Page 1319 
of Smith's daily operations in order to protect its interest. Defendant was to collect all of Smith's receivables and disburse these funds jointly to Smith and Smith's creditors.
Plaintiff became interested in supplying feed to Smith shortly after defendant's agreement to finance the operation, but prior to Smith's receipt of his new birds. Plaintiff, however, determined that Smith was a poor credit risk and accordingly, on March 9, 1976, requested that defendant guarantee payment of Smith's feed bills in the event he defaulted.
Defendant gave plaintiff the following document in response to this request:
 TO WHOM IT MAY CONCERN: This is to certify that the feed will be paid from the proceeds of the egg check and the feed check will be made joint to Douglas M. Smith and who he purchases feed from.
 /s/ Jack Dye
Jack Dye Cullman County Manager
Plaintiff commenced delivering feed to Smith in reliance on this document.
Several days later, the parties exchanged letters in which defendant agreed that feed bills would be paid prior to any reduction of Smith's indebtedness to defendant. As to this, the defendant wrote plaintiff:
 The Huntsville Production Credit Association will have complete control of the operation. All egg checks will be made joint to Mr. Smith and HPCA. The feed and grower costs will be paid by joint check and all over will be applied to Mr. Smith's loan.
The record further reveals that in April, 1976, plaintiff became concerned that in the event Smith's receivables, i.e., "proceeds from the egg checks," were insufficient to pay the feed bills, it might not collect its debt. Plaintiff, therefore, sought a promise from defendant that it would unconditionally guarantee the payment of Smith's debt. The defendant, however, replied:
 After hens get into production the sale of eggs should pay all expenses of feed and grower costs, etc., plus pay some on Mr. Smith's loan. At any time they fail to pay costs plus some on his loan we plan to sell the hens. We don't plan to have a $10,000 feed bill or even a $10 feed bill. . . .
Sincerely,
 Jack Dye County Manager (Emphasis supplied.)
Thereafter, plaintiff furnished feed to Smith until defendant foreclosed upon the operation in February, 1977.
The record reveals that during this period, defendant actively participated in Smith's operation, collecting and disbursing his receivables. Although Smith's maximum indebtedness to plaintiff reached approximately $70,000, defendant satisfied the debt and brought the account current in late December, 1976. During this time, defendant collected approximately $31,000 of Smith's receivables over and above the amount of plaintiff's feed bills.
Notwithstanding the fact that the account was current in December, 1976, defendant was apparently dissatisfied with the rate at which Smith was reducing the note. Accordingly, defendant applied Smith's January earnings of approximately $16,700 to reduce their note and failed to pay plaintiff's $28,700 feed bill. After four weeks of appropriating these receivables for its own benefit, defendant foreclosed upon Smith.
Upon foreclosure, defendant took possession of Smith's assets including the 70,000 chickens and some $4,500 of plaintiff's feed which was on Smith's premises. When plaintiff sought to collect its debt from Smith, Smith petitioned for bankruptcy and the debt was discharged. Plaintiff then brought suit against defendant as Smith's guarantor. Upon the trial court's determination that defendant was not a guarantor, plaintiff appealed. *Page 1320 
On appeal, plaintiff initially contends that the defendant, as guarantor, is liable to plaintiff in the amount of Smith's unpaid debt, i.e., approximately $28,700. Specifically, plaintiff maintains that, in its management of Smith's operation from March, 1976, to February, 1977, defendant collected some $47,700 in proceeds (approximately $16,700 of which were Smith's January earnings) which defendant appropriated to reduce Smith's note, and these should be applied to pay plaintiff's January feed bill. In essence, plaintiff contends defendant absolutely guaranteed the payment of Smith's debt.
While we do not agree that defendant absolutely guaranteed the payment of Smith's debt, we find that the learned and distinguished trial judge erred in not determining that the defendant bound itself under a conditional guaranty. By virtue of the terms of said agreement and the surrounding circumstances as indicated, defendant is liable to plaintiff for the extent of Smith's January earnings which it appropriated to reduce Smith's note after the account was paidcurrent in December, 1976.
At the outset, we set forth the well settled principles of the law of guaranty which are applicable to the instant controversy.
An absolute guaranty is an unconditional undertaking by the guarantor to pay a debt at maturity if the principal does not.Huckaby v. McConnon Co., 213 Ala. 631, 105 So. 886 (1925). Under such a guaranty, a creditor is under no obligation to pursue its remedy against the principal as a prerequisite to its right to recover from the guarantor. Ehl v. J.R. WatkinsMedical Co., 216 Ala. 69, 112 So. 426 (1927).
A conditional guaranty is one which is not immediately enforceable against the guarantor upon default of the principal but one in which the creditor must take some action in order that liability arise. Russell v. Garrett, 204 Ala. 98,85 So. 420 (1920). In a conditional guaranty, such as a guaranty of collection, the guarantor agrees to pay a debt only if the claim is not, after exercise of every reasonable effort on the part of the creditor, collectable from the principal. Walker v.T. G. Forbes, 25 Ala. 139 (1854); Grannis Co. v. Miller Wilkins, 1 Ala. 471 (1840).
A special guaranty is a guaranty of a debt to one or more named persons, or persons necessarily embraced in a described class of persons. See, e.g., American Nat. Bank Trust Co. v.Banco Nacional De Nicaragua, 231 Ala. 614, 166 So. 8 (1936).
A continuing guaranty contemplates a series of future transactions. It is not limited in time or amount and is operative until revoked. See Whitfield v. Birmingham Trust Savings Co., 244 Ala. 526, 14 So.2d 137 (1943). Where the agreement contains no express limitation as to time or amount, it is encumbent on the guarantor to guard against abuse of his confidence and timely revoke its operation. Cahuzac Co. v.Samini, 29 Ala. 288 (1856).
Contracts of guaranty must be supported by consideration. However, where such an agreement is made prior to or contemporaneous with the creditor's contract with the principal, and both agreements are part of the same transaction, consideration moving to the guarantor's principal is sufficient consideration to support the contract of guaranty as well. See, e.g., Scharnagel v. Furst, 215 Ala. 528,112 So. 102 (1927).
The nature and extent to which a guarantor is liable depends upon, and may not be extended beyond the terms of the agreement. See, e.g., Furst v. Shows, 215 Ala. 133, 110 So. 299
(1926). Thus, the guarantor's liability is not necessarily coextensive with that of the principal debtor.
Finally, we observe that payment or satisfaction of the principal debt discharges the guarantor. 38 C.J.S. Guaranty § 77 (1943). With respect to the application *Page 1321 
of payments on a running account, payments are applied in discharge of debts in the order they become due; that is, each payment is applied to extinguish the earliest items of debt.Moorer v. Tensaw Land Timber Co., 251 Ala. 576, 38 So.2d 586
(1949); United States Fidelity Guaranty Co. v. Simmons,222 Ala. 669, 133 So. 731 (1931).
Although we are in agreement with the learned and distinguished trial judge that not every expression of an assurance is a guaranty, the instant agreement is a guaranty. This is so because the agreement, when considered in light of the entire circumstances, expressly certifies that the bills for "feed will be paid." It is conditional to the extent that the debt will be paid "from the proceeds" of Smith's earnings although defendant's liability arises only when, after collection, it fails to disburse them "joint to . . . Smith and those who he purchases feed from."
Plaintiff next contends that the fact that Smith could have purchased feed from feed dealers other than plaintiff is of no consequence in determining whether this agreement was a guaranty to plaintiff. We agree because the instant contract is a special guaranty not only to plaintiff, but to persons necessarily encompassed within the described class of creditors. Stated alternatively, all those from whom Smith purchased feed could rely on defendant's promise to pay feed bills from Smith's earnings.
The defendant's promise in this instance is a continuing guaranty in that it contemplates an unspecified number of future transactions in unspecified amounts. We do not agree with plaintiff, however, that defendant's liability is coextensive with Smith's.
There is implied in every contract a good faith effort to accomplish the result intended by the parties, Fleming LilyFlagg Builders Supply Co. v. Kirkpatrick, 371 So.2d 16 (Ala., 1979), and in this case, defendant was obligated not only to collect Smith's earnings but also to disburse them to plaintiff. However, the express language of the contract limits defendant's liability for only so much of Smith's existing debt as Smith himself could pay. Put another way, defendant is not liable for unpaid feed bills which exceed the amount of Smith's earnings.
There is further support for this conclusion as evidenced by correspondence between the parties and their subsequent course of conduct. As noted above, in letters between the parties, defendant agreed to apply Smith's earnings to plaintiff's debt prior to any reduction of Smith's loan with defendant. By its course of conduct, the defendant in fact paid Smith's receivables to plaintiff to the extent that the account was current by the end of 1976. At this point, satisfaction of the debt discharged the defendant's obligation on the guaranty for past transactions. Moorer, supra.
We also agree with plaintiff's contention that the contract was not void for lack of consideration. Where, as here, the contract of guaranty is made prior to the contract between the principal and creditor, the consideration furnished the principal supports the guaranty contract as well. Scharnagel,supra. We note, however, that defendant in fact received valuable consideration in this instance. Plaintiff's feed sales to Smith directly benefited defendant in that these protected defendant's security interest in the birds until foreclosure.
We likewise agree with plaintiff's contention that the filing of a bankruptcy claim against Smith has no bearing on whether defendant is or is not a guarantor. As we noted above, a conditional guarantor is not liable merely on default of the debtor; liability arises only after the creditor diligently but unsuccessfully pursues its remedies against the debtor. Walker,supra. Here, under the circumstances, plaintiff's only available remedy against Smith was an effort to salvage its claim in the *Page 1322 
bankruptcy action prior to proceeding against defendant. To this court, this further evidences the fact that plaintiff considered defendant its guarantor.
To further substantiate what we have said, we note that in equity and good conscience, a guarantor can make no claim on a fund with respect to which he has guaranteed the rights of others, when the assertion of such a claim is incompatible with the terms of the guaranty. 38 C.J.S. Guaranty § 43 (1943). Under the terms of its agreement, defendant was under a good faith obligation to collect the proceeds of Smith's earnings and to pay these over to plaintiff.
As we previously noted, defendant, from the time that Smith's debt was satisfied in late December, 1976, until foreclosure in February, 1977, collected Smith's receivables in the approximate amount of $16,700. It is to this fund that defendant can make no claim. However, because the running account was paid current in December, 1976, plaintiff is not entitled to funds which defendant collected for its own benefit prior to that time. Put another way, upon defendant's failure to pay over Smith's January receivables, defendant became liable as plaintiff's guarantor in the amount of the proceedscollected after the account was paid current but which it appropriated for its own benefit.
We would be remiss in not commenting that each party has favored this court with excellent briefs and oral argument. We are grateful for their efforts.
The case is due to be reversed and remanded.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.