# Powell *v.* Jones.

*Bill in Equity to Enforce Lien or Charge on Common Fund, and for Adjustment of Accounts and Distribution.*

1. *Equitable lien on common fund, created by agreement.*—Commissioners being appointed by the governor, under authority conferred by a special statute, to locate and procure patents for the State to swamp and overflowed lands donated by act of Congress, their compensation being twenty per cent. of the amount realized by the State on the subsequent sale of the lands, and their expenses to be paid by themselves; an agreement among them, by which one was to advance moneys deemed necessary in the execution of the common business, to be reimbursed out of the fund provided as compensation when collected, creates a charge or lien on the fund, for the amount so advanced, in the nature of an equitable mortgage; which lien or charge is not capable of enforcement at law, and is peculiarly within the jurisdiction of a court of equity.

2. *"Swamp Land Commissioners;" not partners, but tenants in common.*—The "Swamp Land Commissioners" appointed by the governor under the provisions of the act approved February 24th, 1860 (Sess. Acts

[Powell v. Jones.]

1859–60, p. 117), whose duties were to locate and procure for the State patents for the swamp and overflowed lands donated by act of Congress approved September 28th, 1850, and who were to receive as compensation for their services twenty per-cent. of the amount realized by the State on the subsequent sale of the lands, were not partners *inter sese* in the compensation to be earned, but rather sustained to each other the relation of tenants in common.

3. *Tenants in common; right to compensation for extra services.*—Ordinarily, one tenant in common can not recover of the others compensation for services performed by him in managing or taking care of the property, without a promise, express or implied, to pay for such services; but the rule is otherwise, when he performs extraordinary services for the common benefit—services not within the duties required of him by law, nor within the contemplation of his co-tenants; for all charges and expenditures thus incurred, the right of contribution exists, and may be enforced as an equitable charge on the common fund or property.

4. *" Swamp Land Commisssoners;" rights of S. S. Houston's heirs, under special statute authorizing suit.*—Under the special statute approved December 17th, 1873, authorizing the three surviving commissioners " and the legal representatives or heirs of S. S. Houston," the deceased commissioner, to prosecute a suit in equity against the State, for the purpose of determining their compensation and adjusting the rival claims of other persons (Sess. Acts 1873, pp. 65–67), the heirs of said Houston only succeeded to his rights, and took his share of, the common fund charged with all liens to which it was subject in his hands.

5. *Same; limitation of suit for money advanced by one.*—The complainant, one of said commissioners, claiming contribution out of the common fund for moneys advanced by him in aid of the common enterprise, which were " to be refunded to him out of the compensation to be received from the State;" such claim did not accrue until the money was received, and the statute of limitations did not begin to run against him, in favor of the other commissioners, until that time; and the bill showing that it was filed within one year after the receipt of the money, the claim is not barred by the statute of limitations, nor by the staleness of the demand.

APPEAL from the Chancery Court of Montgomery.

The record does not show the name of the chancellor who presided in the court below.

The bill in this case was filed on November 13th, 1878, by James R. Powell, against Urban L. Jones, D. P. Forney, and the heirs of S. S. Houston, deceased, and contained the following allegations: (1.) On April 17th, 1860, Governor A. B. Moore, acting under authority conferred on him by an act of the General Assembly of Alabama, approved February 24th, 1860, entitled " An act to secure to the State of Alabama the lands appropriated to the State of Arkansas and other States, to reclaim the swamp lands within their limits, by act of Congress approved September 28th, 1850," appointed the complainant, said Jones, Forney and Houston, " as agents to select and determine by proper proof the swamp and overflowed lands within the limits of this State, according to the provisions of said act," and issued to them a commission under the great seal of the State; and at the same, the State of Alabama, acting by its then governor, said A. B. Moore, " made a certain

[Powell v. Jones.]

contract in writing with said parties, by which said agents were to select, locate and prove up the swamp and overflowed lands to which the State was entitled under said act of Congress, and were to pay their own expenses of every kind, and were to be allowed as compensation twenty per-cent. of the proceeds of said lands when they should be sold. Search has been made for said contract, and it can not be found. (2.) On March 17th, 1874, said commissioners "filed their bill in equity in this court against the State of Alabama, on said contract, to recover from said defendant the compensation due them for the faithful performance by them of their part of said contract; and said matter was fully litigated, and a decree was rendered in said cause by this court, on the 5th January, 1878, ascertaining the amount due to each of the parties to said cause, which decree was afterwards affirmed by the Supreme Court of the State; and by said decree there was ascertained to be due to each of said commissioners the sum of $1169.64." (3.) "The question of the rights of said commissioners *inter sese* was not decided in said case by this court, nor involved or necessary to be decided therein; nor was said question raised, or presented, or litigated, but the sum found to be due to said commissioners as a body was equally divided between them." (4.) Complainant "paid a large sum, to-wit, $1,500, expenses of said commissioners in and about the execution and performance of their duties under said contract;" that is, he advanced to said Houston $500 at one time, and $300 at another, and made three trips to Washington at an aggregate expense of $300, and paid the expenses of Governor Moore on a journey to Washington in and about the business of the commissioners, procuring patents, &c. "All of said sums of money so paid by your orator were expended in the payment of the necessary and proper expenses of said commissioners, in the execution of their said contract; and the other commissioners have not repaid to him any part of the sums so expended, nor has any one of them; nor did they bear any part of the expenses incurred by said commissioners, or, if any, only a small part, the amount of which is unknown." (6.) "By agreement and contract between complainant and said other commissioners, after they had together examined the maps, &c., in the land-office at Greenville, the portion and character of the work to be done by each was agreed on and determined; by which agreement, complainant was, as his share of the work, to attend to and transact all the business with the General Land-office and Department at Washington, and the expenses of the work to be done were to be borne equally by the said commissioners; your orator agreeing, at the same time, to advance the money to pay said expenses, which were to be refunded to him out of the compensation to be received

from the State; said U. L. Jones was assigned to East Alabama, said Houston to the Perdido and South Alabama, and said Forney to North Alabama." (7.) Complainant "avers that he has the right to have paid to him, out of said moneys so decreed to him and said other commissioners, said several sums of money, with interest thereon from June, 1860, the time when said sums of money were so advanced; and that this court has the right to partition said sums of money among those entitled thereto, after deducting from the gross amount the expenses due to each, such deduction and partition never having been made; and that said accounts are complicated, and can not well be settled in a court of law.   He avers, also, that said U. L. Jones is insolvent, and that no other court than this can do complete justice to all the parties in the settlement of said expense account." (8.)   Complainant charges, "that he performed fully and faithfully, according to his agreement with said other commissioners, every thing by him agreed to be done, and claims that he is entitled to his *pro-rata* share of said moneys, as well as the expenses by him incurred as aforesaid; and that he is also entitled to additional compensation, for the extra services rendered by him in making his last trip to Washington city, for which $200 would be a reasonable compensation." (9.) The moneys adjudged to be due to the commissioners are in the hands of George W. Stone, who was their solicitor in the suit, and who has a claim and lien on the fund for his professional services; and he is made a defendant to the bill.   On these allegations, the bill prayed that the court "ascertain the amount of the expenses paid by complainant, with interest thereon, and the amount of expenses paid by each of said other commissioners, and the value of the services rendered by each in the execution of said contract, or the amounts to which each is entitled, and the amount of the solicitor's fee their said counsel is entitled to retain out of the said fund in his hands; that the residue of said fund be paid into the registry of this court, to be equitably divided among the several parties thereto;" and for other and further relief, under the general prayer.

An answer to the bill was filed by the infant heirs of S. S. Houston, by their guardian *ad litem,* in which was incorporated a demurrer to the bill, on the following grounds:   1st, that the matters alleged are shown to be *res adjudicata,* and the complainant is concluded by the former decree; 2d, that the bill shows that complainant has no claim upon that portion of said fund to which these infant defendants are entitled; 3d, that if the complainant has any right to be reimbursed for moneys expended by him, it is a right which must be enforced against the personal representative of said S. S. Houston, and not against these defendants as his heirs; 4th, that the alleged claim

[Powell v. Jones.]

is barred by the statute of limitations, and is a stale demand; 5th, that complainant has a complete and adequate remedy at law. An answer was also filed by Forney, in which was incorporated a demurrer for want of equity, and because the complainant had a complete and adequate remedy at law; and an answer was filed by U. L. Jones.

An amended bill was afterwards filed, in which the second paragraph of the original bill was struck out, and the following inserted in lieu of it: "An act was passed by the General Assembly of Alabama, approved December 17th, 1873, and entitled 'An act to provide for the adjustment of the claims of all agents, commissioners, and other persons claiming compensation for services rendered in selecting and securing title to the swamp and overflowed lands in the State of Alabama.' The said S. S. Houston died shortly before the passage of said act; and prior to, and at the time of the passage of said act, there were other persons preferring claims against the State of Alabama, for services alleged to have been rendered in selecting and securing titile to said swamp and overflowed lands, which claims did not grow out of, and were not connected with said contract made by and between said commissioners and Governor A. B. Moore, but were antagonistic to their claims under said contract. By virtue of said act of the General Assembly, your orator, and said U. L. Jones, D. P. Forney, and the heirs of said S. S. Houston, there being then and now no representative of his estate, filed their bill in this court aganist the State of Alabama, for the purpose of ascertaining, determining, and apportioning the compensation that may be due, and become due, for services rendered by any and all persons, in and about the selection and survey of said lands, and in procuring titles therefor, and in making sales thereof; and several persons, claiming compensation for services rendered as aforesaid, were, on their several petitions, admitted as parties to said suit, and one M. J. Saffold among them; and upon proceedings had in said cause, a decree was therein rendered, on (to-wit) January 5th, 1878, ascertaining and decreeing that there was to be paid to your orator, said U. L. Jones, and D. P. Forney, each, the sum of $1169.64; and the same amount to the heirs of said S. S. Houston, and to said M. J. Saffold." Another amendment to the bill was the addition of an averment that there had never been a settlement of accounts between the said several commissioners, and an offer to do equity by the complainant.

The only orders or decrees shown by the record seem to be mere extracts from the register's docket, headed "Orders of Court," and in these words: "April 24th, 1882. Ordered and decreed, that the demurrer be sustained, and the motion to dismiss the bill for want of equity should be granted, unless the

[Powell v. Jones.]

same is amended. Ordered, that the complainant be allowed to amend his bill." "April 26th, 1882. Leave is granted to complainant to file an amended bill. Submitted on motion of the administrator of D. P. Forney to dismiss the bill for want of equity, and on demurrers which are re-filed to the bill as amended. It is ordered, that all the demurrers, which are re-filed to the bill as amended, be sustained, except the third, which is overruled; and complainant objecting further to amend, the bill is dismissed for want of equity, at his costs."

The appeal is sued out by the complainant. The errors assigned are—1st, the sustaining of the demurrer to the bill as amended; 2d, the dismissal of the bill; 3d, the final decree rendered.

CLOPTON, HERBERT & CHAMBERS, for appellant.—(1.) On the facts stated in the bill, the several commissioners were partners as among themselves in the compensation to be earned. Tyler on Partnership, 11; Lindley on Partnership, 2; *McCrary v. Slaughter*, 58 Ala. 233; *Smith v. Garth*, 32 Ala. 368; *Meaher v. Cox, Brainard & Co.*, 37 Ala. 201; *Emanuel v. Draughan*, 14 Ala. 303; *Autrey v. Frieze*, 59 Ala. 590. That each partner has a lien on the partnership assets and effects, for any balance due him on a proper accounting together, see *Warren v. Taylor*, 60 Ala. 218, and authorities there cited. (2.) If the relation of partners did not exist between the parties, then they were tenants in common in the compensation to be earned; and a court of equity will decree an account between them, where one has received a greater share of the profits than he was entitled to receive, and there are complicated matters of account between them unadjusted.—*Autrey v. Frieze*, 59 Ala. 588; *Morrow v. Riley*, 15 Ala. 710; *Grigsby v. Nance*, 3 Ala. 347. (3.) These matters of account were not involved in the former suit, and neither were nor could have been determined in that suit; and they are not concluded by the decree rendered in that suit.—Freeman on Judgments, §§ 249–56; *Chamberlain v. Gaillard*, 26 Ala. 504; *Shaw v. Beers*, 25 Ala. 449; *Gilbreath v. Jones*, 66 Ala. 129, 132; *Sawyer v. Randall*, 55 Maine, 227; *Mozley v. Alston*, 1 Phil. 798; *Walker v. Powers*, 14 Otto, 249. (4.) The statute of limitations did not begin to run until the money was recovered from the State, which was less than one year before bill was filed.—*Bradford v. Spyker*, 32 Ala. 134; *Cameron v. Copeland*, 43 Ala. 201.

GUNTER & BLAKEY, for Houston's heirs (and with them TROY & TOMPKINS, for Forney's administrator, and LESTER C. SMITH, for U. L. Jones), *contra*, contended that the decree rendered in

[Powell v. Jones.]

the former suit was conclusive; citing the case of the *Santa Maria*, 10 Wheaton, 441–44.

SOMERVILLE, J.—The present appeal is taken from a decree of the Chancery Court, sustaining a motion to dismiss appellant's bill for want of equity; also sustaining a demurrer interposed by one or more of the defendants, going to the equity of the case made by the bill.   In reviewing the correctness of this ruling, we must, of course, take as true the facts alleged in the bill, so far as well pleaded; and we can not look to, or consider, the denials of the several answers.

The claim of the appellant, Powell, here sought to be enforced, is for certain moneys alleged to have been advanced by him to pay the expenses of himself and the other commissioners, or agents, appointed by the State of Alabama to locate the "Swamp Lands" appropriated to the State by act of Congress approved September 28, 1850.   It was made the duty of these agents to select and determine, by proper proof, these "Swamp Lands" within the limits of this State; to make a report of their work to the Governor, and to procure patents for the same from the United States, in the name, and for the benefit of the State.   The compensation to be received by them was *twenty per cent.* of the amount realized by the subsequent sale of these lands, whenever disposed of by the State.—Acts, 1859–60, pp. 117–118.   Upon suit being brought against the State, it was adjudged that the four commissioners were each entitled to something less than twelve hundred dollars; the heirs of one of them, who had died, being made parties, under authority of a special act of the legislature.   The money was collected, and is now in the custody of the attorney of the parties, subject to the control of the Chancery Court.

The bill, in substance, avers that the expenses of the commissioners, incurred in the prosecution of their official duties, were to be borne equally by them; that appellant was to advance certain moneys deemed necessary to the execution of the joint enterprise, for which he *was to be re-imbursed out of the fund* of twenty per cent., when collected from the State.   It is manifest that such an agreement, resting on *contract* made between the parties, would, if proved, constitute a *lien* or *charge* upon the fund in question, which would be in the nature of an equitable mortgage.   All that is required to this end is, that the intention of the parties, as deducible from the contract, be clear in its purpose to pledge the fund *as a security* for the debt created.   Accordingly, an agreement that a debt shall be paid out of the proceeds of certain property, or that the property shall be *bound for* the debt, has been usually construed to create an equitable mortgage.—Miller on Equitable

Mortgages, 3; Jones' Chat. Mortg. § 13; *Donald v. Hewitt*, 33 Ala. 534, 548; *Butts v. Broughton*, at present term (*ante*, p. 294); *Newlin v. McAfee*, 64 Ala. 357; 1 Jones' Mortg. §§ 166–167; *Jackson, Morris & Co. v. Rutherford*, at present term. Such a lien, being governed by the general doctrine of trusts, constitutes one of the peculiar subjects of equity jurisdiction, being incapable of enforcement at law.—*Dunning v. Stearns*, 9 Barb. (N. Y.) 630; *Kirksey v. Means*, 42 Ala. 426.

Independently, however, of this alleged contract lien claimed by complainant upon this fund, an equity is originated in his favor, arising out of the relationship of the parties. We do not think this relationship is that of *partners*, who are joint owners of the whole property, each having the power to transfer or dispose of the entire partnership effects. It is rather in the nature of a *tenancy in common*, created in the fruits of the joint venture—a legal *status*, which has been likened by Pothier to a "*quasi*-partnership" in some of its characteristics. One of several tenants in common can not dispose of the whole property, but only of his undivided share. He possesses, as it is technically expressed in the books, "the whole of an undivided moiety of the property, and not an undivided moiety of the whole property."—2 Black. Com. 182, 191–193; Story on Part. §§ 89–90. One of its essential attributes is unity of possession, a violation of which, by *conversion* or *ouster*, is a good ground of action.—*Perminter v. Kelly*, 18 Ala. 716; *Bishop v. Blair*, 36 Ala. 80. One most frequent illustration of such a co-tenancy is a cultivation or letting of land on shares, with an agreement among those interested to divide the specific products, or crops.—*Smyth v. Tankersley*, 20 Ala. 212; *Williams v. Nolen*, 34 Ala. 167; *Pruitt v. Ellington*, 59 Ala. 454.

The ascertainment and enforcement of the liabilities growing out of such co-tenancies is a fruitful source of equity jurisdiction, especially in the matters of contribution and account.—1 Story's Eq. Jur. §§ 466, 505; Freeman on Co-Tenancy, § 269. It is true that one tenant in common, like a partner, can not recover of his co-tenant compensation for services performed by him, ordinarily, in managing or taking care of the property, without an *express or implied promise to pay* for such services. The plain reason is, that he is doing nothing more than his duty. But the rule is otherwise, where he performs services not imposed by his relation of co-tenancy; for these may be regarded as extraordinary in their character—not within the duty of the one, nor the contemplation of the other. Freeman's Co-Ten. and Partition. So, of expenses necessarily incurred, or money advanced for the benefit of a joint adventure, the fruits of which are to be enjoyed in common. If the

[Powell v. Jones.]

duty to be performed is joint, or common to all, and not several as to any one, the performance of it would be the removal of a burden or associated liability, much in the nature of discharging an incumbrance, or satisfying a lien.— *Van Horne v. Fonda*, 5 John. Ch. Rep. 388; *Gwinneth v. Thompson,* 19 Amer. Dec. 350. "The purchase of an outstanding title, the removal of a tax, or other lien or incumbrance," says Mr. Freeman, "and *the payment of a sum of money* for the preservation of the common property, or for the protection or assertion of some common right, or the redress of some common injury, are all spoken of, in general terms, as affording a ground of *contribution* in favor of one co-tenant, and against another," limited, it may be, to "the declaration and enforcement of *a lien against the property,*" and not to be established as a personal liability for which a recovery could be had as upon an implied *assumpsit.*—Freeman Co-Ten. and Part. § 263; *Newbold v. Smart,* 67 Ala. 326.

This right of contribution exists, Mr Story says, "for all charges and expenditures incurred for the common benefit." 1 Story's Eq. § 505. It is not founded upon express contract, but, like a vendor's lien, it is an equity originating from the nature of the transaction. True, it arises incidentally from contract; but the equity itself is implied from the relationship of the parties, and the character and necessity of the duty performed for which compensation or contribution is claimed. It has been pronounced "a general equity, founded on the equality of burdens and benefits."—*Screven v. Joyner,* 1 Hill's Ch. 260. In *Rankin v. Black,* 1 Head (Tenn.), 650, which was a joint purchase of land, and an unequal payment of the purchase-money, it was said, that "where the adventure is joint, each is entitled to participate equally in profit or loss, without regard to equality in payment. But it is a clear principle of equity, that the common property will be bound for any excess paid by one over the other. *It is analogous to the law of partnership, by which, as between the partners, the capital must be returned out of the partnership effects, before the profits can be divided.*" This underlying principle, governing the liabilities of tenants in common, is fully discussed and recognized in *Newbold v. Smart,* 67 Ala. 326, where many cases are cited in full support of the doctrine.

Under these principles, the joint fund realized as compensation by the commissioners would be chargeable for any moneys advanced by one of the part-owners for the common benefit of all; the share of each being charged with the amount received by him, in excess of what he has paid out for like common benefit, on account taken as in ordinary cases of partnership dealings.

[Robinson v. Lehman, Durr & Co.]

We do not think the heirs of Houston can claim any more than *his rights* in the litigated fund, apart from any consideration of the statutes of *limitation* and of *non-claim*. The act of December 17, 1873 (Acts 1873, pp. 65–67), authorizing "the legal representatives *or heirs*" of Houston to unite with the other commissioners in their bill against the State, was purely remedial, and was not intended to create or confer any new right. When they recover their proportionate part of the fund, they must take it *cum onere*—charged with all incumbrances, if any, created by their ancestor, and not discharged by operation of law, or the act of the parties.

The claim in question does not appear, from the averments of the bill, to have been barred by the statute of limitations, or to come within the class of demands usually designated as *stale*. The moneys are alleged to have been advanced by the complainant, to aid in carrying out the joint adventure—the execution of the official duties imposed by the statute creating the agency. The further averment is made, that these moneys "were to be *refunded to him out of the compensation to be received from the State.*" This compensation was not received or collected until some time in the year 1878; and until then it is manifest that complainant's claim did not accrue, and no right of action could, therefore, vest in him prior to that time. Hence, the statute did not commence to run until within less than one year before the present bill was filed.

The question of *res adjudicata* we leave undecided, as from the face of the bill, and without some proof, we can not clearly see that the matters here litigated were either actually decided, or necessarily involved, in any previous suit or proceeding between the same parties.—*McDonald v. Mobile Life Ins. Co.,* 65 Ala. 358.

The decree of the chancellor dismissing the bill was erroneous, and must be reversed, and the cause will be remanded.