(85. South. 420)

**RUSSELL v. GARRETT.    (3 Div. 433.)**

(Supreme Court of Alabama.    Jan. 22, 1920.
Rehearing Denied Feb. 12, 1920.)

**1. Guaranty ☜27—Ambiguous contract to be taken most strongly against guarantor.**

Subject to rule that when intent of guarantor has been ascertained, or terms of guaranty are clearly defined, liability of guarantor controlled by such intent and is never to be extended, where language is susceptible of two meanings, it should be taken most strongly against guarantor.

**2. Guaranty ☜9—Unperformed promise of guarantor a nude pact.**

If guarantor reserved absolute right at all times to say whether note whose payment was guaranteed might be foreclosed, yet nevertheless has not said that it might, his promise, so long as it is unperformed, is a nude pact.

**3. Guaranty ☜70—Reservation of right in guarantor to control foreclosure construed.**

Guaranty of railroad's note, drawn by one not skilled in technical legal terms, and reserving to guarantor right to control "foreclosure of the note," held to reserve not only the right to control foreclosure of mortgage bonds pledged as collateral, but also to control any process for collection of the note, not leaving unqualified duty of due diligence to collect by other available means on creditor guaranteed.

**4. Guaranty ☜45—Intention of guarantor was that railroad should be indulged in payment for reasonable time.**

Under contract guaranteeing railroad's note secured by pledged mortgage bonds, held, that the guarantor intended that during a reasonable time after the making of the contract no coercive measures should be adopted by the party guaranteed for the collection of the note, that is, that the railroad should be indulged for a reasonable time; what such time was being a question of law and fact for the jury.

**5. Guaranty ☜71 — Party guaranteed not bound to coercive measures against debtor except on notice from guarantor.**

While, under the contract of guaranty, guarantor of railroad's note secured by pledge of mortgage bonds might order or prohibit for a reasonable time coercive measures against the railroad, after such time the party guaranteed was not bound to such measures until he got notice to proceed.

**6. Guaranty ☜70 — Party guaranteed should have resorted to remedies while available.**

While his remedies were yet available, it was necessary, as a condition of liability of the guarantor of a railroad's note, that the party guaranteed should have resorted to them; otherwise the guaranty, contrary to intention, would become absolute, rather than a guaranty of collection.

**7. Limitation of actions ☜180(1), 182(3)—Bar of statute must be pleaded.**

The bar of the statute of limitations must be specially pleaded in an action at law, and cannot be asserted by demurrer.

**8. Limitation of actions ☜46(10), 47(3)—Statute runs in favor of guarantor or surety from time he is liable.**

The statute of limitations commences to run in favor of a surety or guarantor from the time he is liable to suit.

**9. Guaranty ☜36(2)—One of two payees of railroad's note guaranteed to other only amount paid him.**

Where one of two payees of a railroad's note, on receiving a payment from the other payee, guaranteed to him "the above-named loan," he did not guarantee the whole amount due on the note, but only the amount paid to him by the other payee.

**10. Executors and administrators ☜443(7)—Allegations concerning verification and filing of claim sufficient.**

In an action on a guaranty of a railroad's note from one payee to the other, allegations concerning the verification and filing of the claim against the estate of the guarantor, as represented by defendant, held sufficient as matter of pleading.

Appeal from Circuit Court, Montgomery County; Wm. L. Martin, Judge.

Action by W. P. Russell, as administrator cum testamento annexo of the estate of W. P. Russell, deceased, against Eva F. Garrett, as executrix of the estate of C. W. Garrett, for breach of contract entered into between their testators. From judgment sustaining demurrers to the complaint, plaintiff appeals. Reversed and remanded.

The following is count 2, which also contains the contract referred to in the opinion:

(2) Plaintiff claims of the defendant the further sum of $10,783.15 with interest from February 26, 1917, damages for the breach of agreement entered into by defendant's testator, C. W. Garrett, deceased, on, to wit, January 15, 1910, in words and figures as follows, to wit:

"For and in consideration of $1 to me in hand paid by W. P. Russell, and the payment of $6,902.94 to me for the joint note of the Hayneville & Montgomery Railroad Company for $12,635, made to Russell & Garrett, February 4, 1909, I hereby agree, in case the said W. P. Russell should at any time fail to collect or lose any or all of the above-named amount of $6,902.94, that I will reimburse the said W. P. Russell for any and all losses which he may sustain by reason of making the above loan. Now in order to better secure the said W. P. Russell, I hereby waive all my exemption rights which I have under the laws of Alabama in favor of the said W. P. Russell.

"It is hereby agreed and understood that I have the right to say when the above-described note against the Hayneville & Montgomery Railroad Company shall be foreclosed.
                    "[Signed] C. W. Garrett."

And plaintiff avers that the said joint note of the Hayneville & Montgomery Railroad Company for $12,635 made to Russell & Garrett,

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

February 4, 1909, was payable on or before January 1, 1910, and bore interest from its date, and that neither the said C. W. Garrett during his lifetime nor the defendant, as executrix of his estate under his last will and testament, ever notified the said W. P. Russell, deceased, or his personal representative, to foreclose or bring suit upon the said note described in the agreement set out, but that the executors under the last will and testament of said W. P. Russell, deceased, duly instituted suit upon said note against said Hayneville & Montgomery Railroad Company in the circuit court of Lowndes county, Ala., and judgment in their favor in the sum of $21,266 was duly rendered by said court on, to wit, August 2, 1916. Plaintiff avers that said Hayneville & Montgomery Railroad Company was a corporation engaged in the business of operating a railroad as a common carrier of passengers and freight between the stations of Tyson and Hayneville in Lowndes county, Ala., and that substantially all of its property was used in connection with the operation of said railroad, and that from the time of the rendition of the judgment to February 26, 1917, said Hayneville & Montgomery Railroad Company remained and was insolvent wholly. And plaintiff avers that to secure the payment of said note the said Hayneville & Montgomery Railroad Company assigned as collateral security therefor 14 bonds of said Hayneville & Montgomery Railroad Company in the denomination of $1,000 each, and one Charles Schuessler also assigned to W. P. Russell and C. W. Garrett, as collateral security for said note, 24 bonds of the Hayneville & Montgomery Railroad Company in the denomination of $1,000 each; that neither said note nor said judgment was paid, and after the death of W. P. Russell, deceased, plaintiff, as administrator of his estate, and in pursuance of the statutes of the state of Alabama in such cases made and provided, did sell said 38 bonds of said Hayneville & Montgomery Railroad Company at public outcry, for cash, in front of the courthouse door, in Hayneville, Ala., during the legal hours of sale, on the 26th day of February, 1917, at and for the sum of $10,- 000, which sum was the highest, last, and best bid received for said bonds; that the amount due on said note, with interest thereupon to the date of said sale, was the sum of, to wit, $20,783.15, and that after deducting the amount received for said bonds there was a balance of $10,783.15 of the principal and interest of said note, which the plaintiff has failed to collect, and the defendant has failed to reimburse plaintiff for said sum as agreed to be done by her said testator; hence this suit. And plaintiff further avers that within the time allowed by law he did duly file a verified statement of said claim in the offices of the judge of probate of Lowndes county, Ala., by which judge of probate letters testamentary on the estate of defendant's testator had been duly issued to her.

Rushton, Williams & Crenshaw, of Montgomery, for appellant.

Where susceptible of two meanings, the language of a guaranty is taken most strongly against the guarantor. 24 Ala. 489, 60 Am. Dec. 485; 197 Ala. 443, 73 South. 43; 11 Ill. App. 572; 20 Cyc. 1471. Execution does not lie against the property of a public service corporation, necessary to enable it to perform its public functions. 183 Ala. 531, 62 South. 885, 48 L. R. A. (N. S.) 231; 102 Ala. 635, 15 South. 271, 48 Am. St. Rep. 84. The cause of action did not accrue, and the statute of limitations did not begin to run, until the happening of the contingency. 72 Ala. 392; 81 Md. 155, 31 Atl. 508, 48 Am. St. Rep. 496.

Harry T. Smith & Caffey, of Mobile, Steiner, Crum & Weil, of Montgomery, and Joseph R. Bell, of Hayneville, for appellee.

Conditions to liabilities were not shown. 76 N. Y. 445; 100 Fed. 577, 40 C. C. A. 560; 1 Wend. (N. Y.) 457. There was a too long delay in bringing suit. 40 N. Y. 181, 100 Am. Dec. 469; 48 Minn. 207, 50 N. W. 1033; 101 Wis. 229, 77 N. W. 191; 76 N. Y. 445, 32 N. E. 236. Diligence in realizing on the security was not employed. 52 Misc. Rep. 232, 101 N. Y. Supp. 840, and authorities supra. The complaint was subject to the demurrer. 191 Ala. 339, 67 South. 609; 201 Ala. 29, 77 South. 323; 184 Ala. 236, 63 South. 982; 80 Ala. 30; 13 Corpus Juris, 724. The collateral having been foreclosed without the consent of the guarantor released him from liabilities. 100 Ala. 465, 14 South. 412; 166 Ala. 244, 52 South. 316; 144 Ala. 655, 39 South. 988

SAYRE, J. After judgment sustaining appellee's demurrer to appellant's complaint the latter suffered a nonsuit and by exception reserved the ruling for review in this court. Code, § 3017.

[1, 2] Subject to the rule that when the intent of the guarantor has been ascertained, or the terms of the guaranty are clearly defined, the liability of the guarantor is absolutely controlled by such intent, and is never to be further extended, the law of this jurisdiction is that, where the language of the contract in controversy is susceptible of two meanings, it should be taken most strongly against the guarantor and in favor of the party who has parted with his property upon the faith of the interpretation most favorable to his rights. Crawford v. Chattanooga Savings Bank, 201 Ala. 282, 78 South. 58. The parties are agreed, and there appears to be no occasion for doubt, that, upon the whole, the instrument set forth in the second count of the complaint evidences an intent on the part of appellee's testator, to whom we may refer as Garrett, to guarantee collection and not payment of the debt due from the Hayneville & Montgomery Railroad Company— that it is a guaranty conditioned upon a failure to collect by due diligence. As affecting the question whether the instrument has any definite meaning in respect of other conditions of liability, the relations of the parties, as disclosed by the allegations of the

count, are to be considered. The parties to the paper, appellant's intestate, to whom we may refer as Russell, and Garrett, were joint owners of a note of the Hayneville & Montgomery Railroad Company which was secured by a pledge of $38,000 of the first mortgage bonds of their debtor. That note was past due at the date of the transaction evidenced by the paper. As shown by the last clause, it was understood and agreed that Garrett should have a right to say when the railroad company's note should be foreclosed. It does not appear that he has ever said that the note should be foreclosed. The plaintiff has stated his case, and recoveries are not favored until their right is made to appear by sufficient allegation. So then, if the guarantor reserved an absolute right at all times to say whether the note might be foreclosed, and has not said that it might, his promise, so long as unperformed, is a nude pact. 9 Cyc. 618.

[3] In the brief for appellee it is insisted, in substance, that the language of the clause, the term "foreclose" in particular, is peculiarly apt to a description of the remedy afforded by the pledge of mortgage bonds, inapt to a proceeding to collect the note by other process, and therefore that the clause should be read as reserving only the right to control the foreclosure of the pledge, not the right to control resort to other means of collection, thus leaving the unqualified duty of due diligence to collect by other available means to rest upon appellant's intestate from the inception of the contract relation; but, while the term "foreclose" would have been aptly used to describe a proceeding against the pledge specifically, the guarantor in terms reserved the right to control the "foreclosure of the note." This paper writing was evidently drawn by a hand unskilled in the technical use of legal terms, and we think it may have occurred to such a one to designate any proceeding whatsoever to enforce collection of the note as a foreclosure. At any rate, it seems to us that to limit the meaning according to appellee's insistence would be to indulge an inference not warranted by the language used nor by the rule of construction to which we adverted in the beginning. The most natural meaning of the clause appears to be that the guarantor stipulated for the control of any process for the collection of the note, and that, while on its face the stipulation seems to be one for indulgence to the railroad company, the guarantor must be considered to have treated it as a matter of advantage to himself for which he contracted and is entitled to have.

In the first paragraph of the contract it appears that the guarantor, Garrett, agreed that he would reimburse Russell in case the latter should "at that time" fail to collect. The quoted phrase cannot refer to the previ-

ously stated date, for that was the date of the execution of the Hayneville & Montgomery Railroad Company's note, nor to the date of the maturity of the note, for that too was then past; the date of the instrument in question being January 15, 1910. In the construction of contracts the law seeks to conserve rather than destroy. The parties evidently had in mind the time when the note might be foreclosed, and it must be that in the phrase "at that time" they referred to the time when the note would be foreclosed and to the eventuality that such foreclosure would fail to produce funds sufficient to pay the note.

[4-6] Appellant insists that the instrument in question should be held to mean that the guarantor should have only a reasonable time during which to have control over the efforts of Russell to collect the debt due from the railroad company by coercive process. As we have heretofore pointed out, it would destroy the obligation of the paper to hold that the guarantor reserved an absolute right at all times to say whether the note might be foreclosed. Applying the rule of the courts, which conserves rather than destroys, and another, to wit, that if no time is fixed for performance the implication is of a reasonable time—a principle that is applied to a great variety of contracts (2 Page on Con. § 1154)—and bearing in mind that, in the absence of the stipulation shown by the last clause, it would have been the duty of Russell to proceed at once to the exercise of diligence for the collection of the note then past due, we hold that the parties intended that during a reasonable time after the making of the contract set forth in count 2 no coercive measures should be adopted by appellant, or his intestate, for the collection of the railroad company's note, that is, that the company should be indulged for a reasonable time. But upon this interpretation of the agreement without more, and with the limited information afforded by the complaint as to the relations of the parties concerned in the arrangement and the ends they sought to accomplish thereby, we could hardly say when such reasonable time would or did expire. Upon a full hearing of the evidence that would probably be a mixed question of law and fact proper to be submitted to the jury. Strawbridge v. Robinson, 5 Gilman (Ill.) 470, 50 Am. Dec. 420. It is alleged "that neither the said C. W. Garrett during his lifetime nor the defendant, as executrix under his last will and testament, ever notified the said W. P. Russell, deceased, or his personal representative, to foreclose or bring suit upon the said note described in said agreement," but further allegation is that appellant recovered judgment against the company August 2, 1916, and foreclosed the pledge February 26, 1917. These allegations disclose appellant's theory that, al-

though, in general, diligence to collect from the principal debtor is a condition precedent to the guarantor's liability, still, since appellant's right to proceed against the railroad company was conditioned upon the will of the guarantor, and the guarantor needed no notice of the principal debtor's default—this last because the agreement was made with a view to a default then existing—that in view of these facts appellant and his intestate might, without being charged with lack of diligence, wait for notice from the guarantor to proceed to collect the debt from the railroad company by any and every available means; in other words, that, while the guarantor for a reasonable time might either order or prohibit coercive measures against the railroad company, after such time appellant was not bound to such measures until he got notice to proceed; and it would seem that such operation and effect should be assigned to the agreement. It is not perceived how otherwise the stipulations of the agreement may be made to consist with a workable guaranty of the debt due to appellant's intestate. That the guarantor may waive diligence on the part of the guarantee is to be inferred from the ruling in Phillips-Boyd Publishing Co. v. McKinnon, 197 Ala. 443, 73 South. 43. However, while yet his remedies were available, it was necessary, as a condition of appellee's liability, that appellant should have resorted to them, for otherwise the guaranty, contrary to the intent of the parties, would become absolute rather than a guaranty of collection.

[7, 8] The bar of the statute of limitations must be specially pleaded in actions at law, and cannot be asserted by demurrer. Huss v. Railroad, 66 Ala. 473. But it is well enough, nevertheless, to say that appellant's action was not shown by the complaint to have been barred by the statute of limitations. The statute commences to run in favor of surety or guarantor from the time he is liable to suit; in this case from the time when appellant exhausted his remedies against the railroad company without securing full satisfaction of the claim guaranteed. 1 Brandt, Sur. & Guar. § 161; Powell v. Jones, 72 Ala. 392.

[9] The complaint discloses the fact that on August 2, 1916, the railroad company was indebted on account of the note to Russell and Garrett in the sum of $21,266, and that by the foreclosure of February 26, 1917, the sum of $10,000 was realized. Appellant proceeds upon the theory that appellee may be charged with the total balance of $10,783, due as of the date on which this suit was brought, to wit, January 27, 1919. This result would follow from appellant's contention that appellee's testator, by guaranteeing "the above-named loan," guaranteed the whole amount due upon the note. We cannot agree, nor on the other hand do we think that the entire sum should be credited to that part of the indebtedness guaranteed by Garrett. In our opinion, the agreement shows that appellee's testator guaranteed only the amount paid him by Russell, approximately one-half of the amount due upon the note at the date of the agreement. One-half (approximately) of the amount realized by the foreclosure should have been credited to the sum guaranteed by appellee's testator.

[10] The allegation concerning the verification and filing of the claim against the estate represented by appellee was, as matter of pleading, sufficient. As to the filing, a similar question was raised and decided in Gillespie v. Campbell, 149 Ala. 193, 43 South. 28. As to the verification, we think the allegation as to that will pass muster. "The word [to verify] * * * sometimes means to confirm or substantiate by oath and sometimes by argument. * * * When used in legal proceedings it is generally employed in the former sense." De Witt v. Hosmer, 3 How. Pr. (N. Y.) 284, quoted in 40 Cyc. 194, note.

The grounds of demurrer to the complaint are very numerous, but we have said enough to indicate our opinion as to all of them. It results from what we have said that the demurrer to the second count of the complaint should have been overruled.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes