(93 South. 711)

### RUSSELL v. GARRETT.  (3 Div. 556.)

(Supreme Court of Alabama.   May 4, 1922.
Rehearing Denied June 30, 1922.)

**1. Appeal and error ⟨⚖⟩866(1)—Each ruling assigned considered on appeal, notwithstanding demurrers overruled on different dates.**

Upon voluntary nonsuit taken because of cumulative effect of overruling of plaintiff's demurrers to special pleas, each ruling may, in conformity with Code 1907, § 3017, be assigned and considered on appeal, regardless of whether demurrers were overruled on different dates.

**2. Appeal and error ⟨⚖⟩339(2) — Appeal from rulings on special pleas on different dates allowed within six months of final judgment.**

Where plaintiff's nonsuit is upon cumulative effect of overruling of demurrers to special pleas on different dates, appeal must be taken, under Gen. Acts 1915, p. 711, as amended by Gen. Acts 1919, p. 84, within six months, not from dates of different rulings, but from date of final judgment.

**3. Contracts ⟨⚖⟩152—Where ambiguous or uncertain words may be supplied or rejected to give effect.**

Where a contract is ambiguous or uncertain, words may be supplied or rejected to make effective parties' reasonable intention.

**4. Contracts ⟨⚖⟩143—Must be construed as a whole and each part given effect where possible.**

A contract must be construed as a whole, and each part considered, and if possible given effect, in connection with the entire agreement.

**5. Contracts ⟨⚖⟩147(1)—Should be interpreted to speak intention of parties at time made.**

Contracts should be interpreted to speak the intention of the parties at the time when made.

**6. Evidence ⟨⚖⟩455—Words of doubtful meaning may be interpreted by parol dehors written instruments.**

Words of doubtful meaning or application may be interpreted by parol proof dehors the instrument.

**7. Contracts ⟨⚖⟩169—Where not clear on their face must be interpreted from surrounding circumstances.**

Contracts not clear on their face must be interpreted from circumstances surrounding the parties when contracting.

**8. Guaranty ⟨⚖⟩47—Time of accrual of liability.**

Where, after maturity, a payee transferred by written contract his interest in a note secured by a mortgage, and reserved the right to say when the "note" should be foreclosed, the court rejected the word "note" and supplied therefor the word "mortgage," to remove ambiguity, since mortgages and not notes are foreclosed; and an agreement to reimburse transferee if he should fail to collect the note "at that time" meant time of mortgage foreclosure, and not maturity of the note; the note being transferred after maturity.

**9. Guaranty ⟨⚖⟩47—Contract construed as to accrual of liability where joint payee transferred and guaranteed note secured by collateral and mortgage.**

A written contract, transferring a joint payee's one-half interest in a note, with guaranty that upon foreclosure of mortgage upon the maker's property given to secure bonds given as collateral the guarantor would reimburse the transferee if he failed to collect one-half the note, construed not as agreeing to pay merely upon sale of the bonds and failure to collect a possible deficiency, but to take effect only upon failure to collect a deficiency, if any, after application of one-half the proceeds from mortgage foreclosure upon one-half the note and interest.

**10. Guaranty ⟨⚖⟩27—Guarantor's liability not extended by implication.**

A guarantor's liability may not be extended by implication beyond express terms, notwithstanding guarantor would sustain no injury, or that a change is for his benefit.

**11. Contracts ⟨⚖⟩212(2)—Performance within reasonable time presumed when contract fixes no time.**

Intention to perform within a reasonable time is presumed when the contract fixes no time.

**12. Guaranty ⟨⚖⟩45—Guarantor of note secured by mortgage reserving right to fix date of foreclosure has reasonable time to fix such date.**

Where a payee of a note secured by collateral bonds secured by a mortgage upon the maker's property transferred his interest to and guaranteed his joint payee against losses arising upon foreclosure, reserving the right to fix the date of foreclosure without stating any time for his act, he, guarantor, or, upon his decease, his executrix, had a reasonable time after power of sale in the mortgage became operative, or, if it contained no power of sale, after maturity of the bonds, to fix such date.

**13. Guaranty ⟨⚖⟩45—Six years after execution held reasonable time for performance where no time named.**

Where guarantor's liability by contract executed in 1910 was to accrue if a mortgage foreclosure failed to satisfy the note guaranteed, the guarantor reserving the right to name time of foreclosure without setting definite date for his act, a foreclosure by party guaranteed more than six years after the contract of guaranty afforded reasonable time for guarantor to act, especially in view of Code 1907, § 4835, providing that actions on writings not under seal must be commenced within six years.

---

**14. Guaranty 36(3)—Guarantor of note secured by mortgage could not complain where party guaranteed enforced judgment on note and foreclosed in one proceeding.**

Where guarantor's liability was to accrue if foreclosure of a mortgage securing the note guaranteed did not satisfy the note, and the plaintiff, who was guaranteed, got judgment on the note, and then in one action foreclosed and enforced the judgment, which was a lien on part of maker's property, and caused all his property to be sold for a lump sum, guarantor could not, where not averring what the property brought at the sale, complain it was impossible to tell amount still due on the judgment, since the only question was whether plaintiff received the amount guaranteed.

**15. Executors and administrators 443(7)— Averment that claim in suit was filed with probate judge held sufficient upon plea of general issue.**

In action against an executrix, an averment that the claim in suit was duly filed with the probate judge was sufficient as against a special plea that plaintiff failed in the probate procedure within the time required by law, where the plea of general issue placed the burden of proving these matters on plaintiff.

Sayre, J., dissenting in part.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by W. P. Russell, as administrator, against Eva F. Garrett, as executrix, for damages for breach of agreement. From judgment overruling demurrers to pleas, plaintiff takes nonsuit and appeals. Reversed and remanded.

Rushton & Crenshaw, of Montgomery, for appellant.

Written contract cannot be varied by oral agreements made at the same time. 98 Ala. 260, 13 South. 48; 31 Ala. 253. Where pledgee is not authorized to purchase collateral, sale to him is voidable, and not void; an action to set aside sale must be taken within reasonable time thereafter. 21 R. C. L. 694; 55 Or. 14, 101 Pac. 393, 104 Pac. 888, Ann. Cas. 1912A, 516; 152 N. C. 18, 67 S. E. 46, 136 Am. St. Rep. 811; 77 Cal. 267, 19 Pac. 494, 11 Am. St. Rep. 279; 31 Colo. 220, 72 Pac. 1079, 102 Am. St. Rep. 30; 85 Fed. 539, 29 C. C. A. 333; 224 Mass. 62, 120 N. E. 89; 87 Ala. 644, 7 South. 106. Where mortgagee makes unauthorized purchase at his own sale, the mortgagor must elect to disaffirm within two years. 130 Ala. 215, 30 South. 420; 124 Ala. 347, 26 South. 900; 82 Ala. 622, 2 South. 520. Execution does not lie against the property of a public service corporation necessary to enable it to perform its public duties. 102 Ala. 635, 15 South. 271, 48 Am. St. Rep. 84; 183 Ala. 531, 62 South. 855, 48 L. R. A. (N. S.) 231. A guarantor is not discharged by negligence of a creditor, but must also show that he has suffered loss by reason of failure of creditor to pursue his remedies against the principal debtor. 20 Me. 79; 30 N. C. 114; 81 Md. 155, 31 Atl. 508, 48 Am. St. Rep. 496; 201 Ala. 282, 78 South. 58. Where goods mingled are of a kind which may be identified, burden is on him who causes the confusion to distinguish his own property. 12 C. J. 494; 68 Ala. 192; 5 R. C. L. 1055; 92 Tex. 187, 47 S. W. 95, 516.

Steiner, Crum & Weil, of Montgomery, Joseph R. Bell, of Hayneville, and Harry T. Smith & Caffey, of Mobile, for appellee.

The pledgee of the bonds had a right to foreclose the mortgage securing them. 8 Gray (Mass.) 135, 69 Am. Dec. 239; 129 Mass. 547; 58 Neb. 402, 78 N. W. 730; 74 App. Div. 81, 77 N. Y. Supp. 252. The contract was one of guaranty against actual loss. 131 App. Div. 818, 116 N. Y. Supp. 106. A mere change in the form of the security did not determine whether there was a loss; the guarantee continued to hold the bonds after the sale to himself as before security for the debt. 8 Gray (Mass.) 135, 69 Am. Dec. 239; 129 Mass. 547; 58 Neb. 402, 78 N. W. 730; 167 Mass. 426, 46 N. E. 52, 57 Am. St. Rep. 466; Colebrooke, Coll. Sec. 380; Jones, Coll. Sec. (3d Ed.) § 683; 86 Pa. St. 116. The mortgage securing the bonds was the real security. (D. C.) 224 Fed. 143; 58 Neb. 402, 78 N. W. 730. The question of loss could not be determined until this security was finally converted into money. Authorities supra. The contract being ambiguous, defendant could plead it according to its true intent, and could offer evidence of the situation of the parties, their object, etc. 172 Ala. 442, 55 South. 201; 199 Ala. 620, 75 South. 284.

MILLER, J. On February 4, 1909 the Hayneville & Montgomery Railroad Company executed a note to Russell & Garrett for $12,635, payable January 1, 1910, with interest from date, secured by 38 bonds of the railroad company in denominations of $1,000 each. On January 15, 1910, after the maturity of the note, C. W. Garrett sold his interest in the note to W. P. Russell under a written agreement, which is as follows:

"For and in consideration of one dollar to me in hand paid by W. P. Russell, and the payment of six thousand nine hundred two and 94/100 dollars to me for the joint note of the Hayneville & Montgomery Railroad Company for $12,635, made to Russell & Garrett, Feb. 4, 1909, I hereby agree that in case the said W. P. Russell should at that time fail to collect or lose any or all of the above-named amount of $6,902.94, that I will reimburse the said W. P. Russell for any and all losses which he may sustain by reason of making the above named loan.

"Now, in order to better secure the said W. P. Russell, I hereby waive all my exemption

rights which I have under the laws of Alabama in favor of the said W. P. Russell.

"It is hereby agreed and understood that I have the right to say when the above-described note against the Hayneville & Montgomery Railroad Company shall be foreclosed.

"[Signed]   C. W. Garrett.
"Witness: J. D. Reese, Jr."

W. P. Russell and C. W. Garrett are both dead. W. P. Russell, as administrator with the will annexed of the estate of W. P. Russell, deceased, files this suit on the contract for damages for its breach against Eva V. Garrett, as executrix of the estate of C. W. Garrett, deceased.

[1] There are two counts in the complaint. Demurrers were sustained to each; plaintiff took a nonsuit; and this court reversed the case, holding the demurrers to the second count should have been overruled. Russell v. Garrett, 204 Ala. 98, 85 South. 420. This count, No. 2, set out the contract. It was construed on demurrer under averments of the complaint by this court in the opinion. The defendant filed 47 pleas to this count (2); Demurrers of plaintiff to 17 of these pleas were overruled. The plaintiff took a nonsuit. Section 3017, Code 1907. These rulings of the court are now assigned as errors. Some of these 17 pleas were filed before and demurrers to them were overruled by the court on November 9, 1920, and the other pleas were filed December 10, 1920, and demurrers to them were overruled by the court on April 11, 1921. The judgment of April 11, 1921, recites as follows:

"And on account of the adverse rulings of the court in overruling the plaintiff's demurrers to the special pleas filed by the defendant, the plaintiff takes a nonsuit with leave to review the rulings of this court in overruling plaintiff's demurrers to the special pleas of defendant in the Supreme Court."

Each of the 17 pleas is a special one; demurrers to some were overruled November 9, 1920; then other special pleas were filed, and demurrers to them overruled April 11, 1921, when the nonsuit as to the rulings on the pleadings—"overruling plaintiff's demurrers to the special pleas"—was taken by plaintiff.

The defendant insists that the overruling of demurrers to pleas 17, 18, 20, 21, 23, and 24, entered by the court November 9, 1920, should not be considered by this court, as the nonsuit was not taken by plaintiff until after the rulings on demurrers to other pleas were made by the court on April 11, 1921; that the last rulings, and not the former rulings of the court, caused the nonsuit. That part of the statute applicable reads:

"If, from any ruling or decision of the court on the trial of a cause, * * * upon pleadings * * * it may become necessary for the plaintiff to suffer a nonsuit, the * * * ruling * * * may be reserved for the decision of the Supreme Court * * * by appeal on the record as in other cases." Section 3017, Code 1907.

In Laster v. Blackwell, 128 Ala. 145, 30 South. 663, this court wrote:

"The assignments of error relate alone to rulings in the exclusion of evidence and exceptions having been reserved to each, a fair construction of the bill of exceptions sufficiently indicates that the nonsuit was in consequence of those rulings cumulatively."

Again, in Engle v. Patterson, 167 Ala. 117, 52 South. 397, we find:

"This statute was not intended to authorize a plaintiff to escape a final judgment by taking a nonsuit, perhaps on the last ruling, and then review all anterior adverse rulings, but was intended to enable a review upon appeal only the ruling causing the nonsuit."

In Berlin Mach. Wks. v. Ewart Lumber Co., 184 Ala. 272, 63 South. 567, we find:

"It is true that we have frequently held that on an appeal from a voluntary nonsuit we would review those rulings only which superinduced the nonsuit; yet we have never held that, where several adverse rulings have superinduced the nonsuit, we would review only the last ruling."

The record shows the nonsuit was taken on account of the court overruling plaintiff's demurrers to the special pleas of defendant; the rulings of the court on April 11, 1921, and November 9, 1920, were both on demurrers to the special pleas; the record recites these rulings caused the nonsuit; these rulings of the court are cumulative. The combination of each ruling and these cumulative rulings cause the nonsuit as shown by the record, and these rulings on each should be considered on appeal. When the record discloses, as in this case, that the nonsuit was taken on account of the rulings of the court in "overruling plaintiff's demurrers to the special pleas," and each ruling of the court on the demurrer to each special plea may be assigned as error, and should be considered by this court; and it is immaterial that demurrers to these special pleas were overruled by the court on different dates. Engle v. Patterson, 167 Ala. 117, 52 South. 397; Berlin Mach. Wks. v. Ewart Lumber Co., 184 Ala. 272, 63 South. 567; Laster v. Blackwell, 128 Ala. 143, 30 South. 663.

[2] The appeal must be taken within six months, not from the dates of the different rulings of the court on demurrers to the pleas, but from the date of final judgment of the court on the nonsuit of plaintiff. The nonsuit was taken and final judgment rendered thereon by the court on April 11, 1921, and security for the costs of the appeal was given by plaintiff and approved by the clerk on June 11, 1921. This appeal was within the time and in the manner allowed by the

statute. Gen. Acts 1915, p. 711, as amended Gen. Acts 1919, p. 84.

[3] In Birmingham Water Wks. Co. v. Windham, 190 Ala. 640, 67 South. 426, we find this principle declared on the interpretation of contracts:

" 'Words may be supplied, or may be rejected, when necessary to carry into effect reasonable intention of parties'—a process that is allowable when there appears 'contradiction, ambiguity or uncertainty in the terms of the instrument.' "

See, also, Boykin v. Bank, 72 Ala. 262, 47 Am. Rep. 408.

There is ambiguity and uncertainty in this contract.

[4] The general rule for interpreting contracts is expressed in 13 Corpus Juris, p. 525, § 486, as follows:

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument, and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement and all parts of the writing, and every word in it will, if possible, be given effect."

[5, 6] In the case of Mobile County v. Linch, 198 Ala. 61, 73 South. 425, we find this rule:

"The true rule of interpretation of contracts is to make them speak the intention of the parties as at the time they were made. A corollary of this rule is that, where any doubt arises as to the true sense and meaning of the words themselves, or as to their application under the particular circumstances, their import may be shown by parol proof dehors the instrument itself."

See, also, Chambers v. Ringstaff, 69 Ala. 140; Cassels' Mill v. Strater Bros., 166 Ala. 283, 51 South. 969.

[7] Contracts, not clear on their face, must be interpreted in the light of the circumstances surrounding the parties, when it was made, in arriving at their intention. In Whitsett v. Womack, 8 Ala. 481, the court wrote:

"And the condition of the bond ought to be construed, by rejecting insensible words, as to fulfill the intent of the parties. * * * The court may depart from the letter of the condition of a bond, to carry into effect the intention of the parties."

In Wailes v. Howison, 93 Ala. 379, 9 South. 595, Justice Coleman wrote:

"And all its parts should be so construed as to give to each effect and validity (Comer v. Bankhead, 70 Ala. 136), and in case of 'contradiction, ambiguity or uncertainty' it is permissible to supply or reject words, to carry into effect the reasonable intention of the parties."

[8] It appears from the complaint and the averments in pleas 17 and 18 that this $12,-635 note was secured by $38,000 in bonds, in denominations of $1,000 each, as collateral; these bonds were secured by a first mortgage on the Hayneville & Montgomery Railroad Company's property. So, this contract must be construed in connection with the $12,635 note, the $38,000 bonds, and the mortgage of the railroad company securing the bonds. These papers shed light on the meaning of the contract, and assist in finding the intent of the parties in making it. These papers are in writing; they are all closely and vitally connected with the contract; and they are not before us. All of these alleged facts did not appear before this court when the contract was under interpretation on demurrers to the complaint on former appeal (204 Ala. 98, 85 South. 420). Hence they shed more light on the real meaning of the contract and the intent of the parties in making it. The law of the case cannot be clearly declared until all the facts are clearly disclosed. However, these written evidences connected with the contract are not before us. As on former appeal, so on this appeal, we must continue to construe the contract under the averments of facts under demurrer as they appear in the complaint and pleas, as the parties have given them to us. Let us apply the foregoing principles of law to the construction of this contract. The word "foreclose" is used in the contract. It says:

"I have the right to say when the above described *note* against the Hayneville & Montgomery Railroad shall be *foreclosed*." (Italics ours.)

Notes are never foreclosed; mortgages are foreclosed. Foreclosed is used in connection with a mortgage and never in connection with a note, if there is a mortgage in the transaction. Is it not reasonable that the word "mortgage" was intended where the word "note" was used? There was a mortgage in the transaction, and only one; and it was a mortgage "against the Hayneville & Montgomery Railroad" Company. It secured the bonds. It was a part of the transaction. It was the security for the note and bonds. Of all the papers connected with the contract. the *mortgage* only, which secured the bonds, both of which were held as collateral security for the note, *could be foreclosed*. Did not the parties intend by the contract to say:

"I have the right to say when the above-described 'mortgage' against the Hayneville & Montgomery Railroad shall be foreclosed"?

We know what that means. It looks like that was what the parties intended. When it is read that way, it is not uncertain; it is then not so ambiguous and doubtful. This appears to be the natural meaning of the

parties under the written papers. In the contract we find these words "at that time." They can't refer to the maturity of the note. It was past due when the contract was made. So it 'must refer to the foreclosure of the mortgage; "at that time," meaning when the mortgage "shall be foreclosed." The last paragraph of the contract uses the word "*when*." It is used in connection with the word "foreclosed." The contract says, "I have the right to say when" the mortgage "shall be foreclosed." The contract also says, "In case the said W. P. Russell should *at that time* fail to collect," etc. It appears when the entire contract is considered "*at that time*," clearly refers to the time "*when*" the mortgage "*shall be foreclosed*"; that is the only future event in the contract.

Let us read the contract with the above interpretation given to each part. The first part expresses the consideration for the transfer of the joint note, and then the material part to be interpreted should read to express their intention and clear meaning:

"It is hereby agreed and understood that I [C. W. Garrett] have the right to say when the above-described note [mortgage] against the Hayneville & Montgomery Railroad Company shall be foreclosed." "I [C. W. Garrett] hereby agree that in case the said W. P. Russell at that time [when the mortgage shall be foreclosed] fails to collect or lose any or all of the above-named amount of $6,902.04, that I will reimburse the said W. P. Russell for any and all losses which he may sustain by reason of the making of the above loan."

Under the contract the mortgage must be foreclosed. The defendant's testator, Garrett, under the contract, had the right to say when the mortgage "shall be foreclosed," and when it was foreclosed, if the property therein failed to bring an amount sufficient to pay the entire principal and interest evidenced by the note, and the balance could not be collected out of the railroad company, then he guaranteed to pay one-half—his one-half of the deficit, the loss—on the collection of the note.

[9, 10] There is no averment in the complaint that the $38,000 bonds are secured by a mortgage given by the Montgomery & Hayneville Railroad Company on its property. Now we have such averments before us. Hence without those facts this court in this case wrote (204 Ala. 100, 85 South. 423) on former appeal, on this phrase "at that time" in the contract, as follows:

"The parties evidently had in mind the time when the note might be foreclosed, and it must be that in the phrase 'at that time' they referred to the time when the note would be foreclosed and to the eventuality that such foreclosure would fail to produce funds sufficient to pay the note."

This is in full accord with this opinion when considered in connection with the ad-ditional averments before us about the mortgage transaction. The mortgage must be foreclosed, and the proceeds from the sale of the property, to be credited on the $38,000 bonds, must be insufficient to pay in full the $12,635 note and interest, and the balance due must be uncollectable, by due diligence, out of the railroad company, before the contract will be breached and before the defendant can be required to pay under his guaranty therein one-half of the deficit. This contract guarantees payment of one-half of the note, if it is not collected by foreclosure of the mortgage, and if the balance cannot be collected by the exercise of due diligence out of the railroad company.

Garrett did not guarantee by the contract to pay one-half of the loss in collection of the note, if the bonds were sold under the statute as collateral security and the balance could not be collected from the railroad company. He contracted to pay and guaranteed by the contract to pay one-half of the loss in collection of the note, if there was any, provided the property was sold under the mortgage and the amount realized was insufficient to pay the note, and the balance by due diligence could not be collected from the railroad company. If the property was sold under the mortgage and brought an amount more than sufficient to pay the principal and interest of the note and cost of foreclosure, then the contract was not breached, and no damages could be recovered thereon by the plaintiff.

If the plaintiff, contrary to the conditions of the contract, sold the $38,000 bonds under the statute as collateral security, and the plaintiff purchased the bonds at such sale for less than the amount of the $12,635 note debt, and then plaintiff foreclosed or caused to be foreclosed the mortgage, which secured the bonds, as the contract directed and provided, and realized from the sale of the property therein on the $38,000 bonds more than enough to pay the $12,635 note and interest, then the terms of the contract were performed; its conditions were fulfilled. The contract was not breached, as defendant's half of the note with interest was paid by proceeds realized by the mortgage being foreclosed as the contract provided and required. The defendant is entitled to have under the guaranty contract with plaintiff the proceeds received by plaintiff from the sale of the property under the mortgage applied on the debt, which he guaranteed in the contract would be paid by him. In Manatee County State Bk. v. Weatherly, 144 Ala. 658, 39 South. 989, this court quoted approvingly:

"Nothing can be clearer, upon both principle and authority, than the doctrine that the liability of the guarantor is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obli-

gation he is bound, and no further. It is not sufficient that he may sustain no injury by the change in the contract, or even that it may be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal."

The contract controls and governs, between plaintiff and defendant, the application of the payment of one-half of the proceeds of the sale of the property under the mortgage foreclosure, which plaintiff received for the $38,000 bonds. It must be placed on defendant's debt (one-half of the $12,365 note and interest) which Garrett guaranteed by one contract would be paid by him, if it was not paid by the mortgage foreclosure sale, and the balance, if any, could not be collected out of the railroad company by the exercise of due diligence. Under the contract between plaintiff and defendant, the plaintiff continued to hold the $38,000 bonds, after their sale as collateral under the statute to plaintiff (himself) as he held them before the sale, as security for the debt guaranteed by defendant's intestate.

[11, 12] The contract fixed no time when the defendant or her testator had the right to say when the mortgage should be foreclosed. When no time is fixed by the contract, then the law presumes that the parties intended performance within a reasonable time. The defendant's testator, Garrett, or defendant, had a reasonable time after the power of sale in the mortgage became operative, if it contained a power of sale, and if it contained no power of sale then they had a reasonable time after the maturity of the bonds or the right to foreclose in court the mortgage, to say when the mortgage shall be foreclosed; if the defendant or her testator failed within that time to direct the mortgage to be foreclosed under the power in it or by legal proceedings in court, then the plaintiff or her intestate had the right, and it was plaintiff's duty to foreclose it. Cotton v. Cotton, 75 Ala. 345; Erswell v. Ford, 205 Ala. 494, 88 South. 429.

Let us apply these principles of law and this interpretation of the contract to the pleas in the case, to test their sufficiency. The plaintiff sues for damages for breach of the contract. The complaint contains the contract. The complaint avers also in substance that the $12,635 note given by the railroad company was secured by $38,000 in bonds as collateral; the note was reduced to judgment; the $38,000 in bonds held as collateral were sold under the statute for $10,000; the Montgomery & Hayneville Railroad Company, maker of the note, was insolvent, and the balance on the judgment cannot be collected, and plaintiff sues on the contract made by defendant's intestate to recover under its guaranty the balance due on the judgment on the note, after crediting it with the $10,000. This court on former appeal (204

208 ALA.—7

Ala. 100, 85 South. 423) held this count stated a good cause of action, and demurrers to it should be overruled.

Pleas 17 and 18 aver, in substance, that C. W. Garrett agreed by the contract to reimburse W. P. Russell for the loan only in event W. P. Russell or his personal representative should fail to collect said debt by foreclosing the mortgage given by the said railroad company on its property to secure said $38,000 bonds held as collateral to secure said $12,635 note, and after plaintiff had exhausted all other remedies to collect the note; that the plaintiff became the purchaser of the bonds at the sale of them as collateral mentioned in the complaint. One plea avers the mortgage was afterwards foreclosed, and the other plea avers it was afterwards foreclosed, or caused to be foreclosed, by plaintiff; and both pleas aver that plaintiff realized on said $38,000 bonds from the foreclosure of the mortgage more than enough to pay the entire amount then due on the judgment on the note against the railroad company, with the interest thereon. It is clear from this plea, if the facts alleged are true, there was no breach of the contract. There was no loss sustained by plaintiff on the collection of the $12,635 note when the mortgage securing the $38,000 bonds was foreclosed, as the contract provided. The plaintiff received on the $38,000 bonds from the proceeds of the mortgage foreclosure sale of the property an amount more than sufficient to pay the $12,635 note debt and interest, which they secured; and under the contract this released the defendant from liability. These pleas (17 and 18) state a good defense to the cause of action. Demurrers to each were properly overruled.

Pleas 7a, 9a, 10a, 11a, 12a, 14a, 27a, are in legal effect the same as pleas 17 and 18. Each plea avers that the $38,000 bonds were sold as collateral security contrary to the contract; that plaintiff purchased them at the sale, the contract gave him no authority to purchase them; the mortgage was foreclosed afterwards by the plaintiff, and from the proceeds of the sale of the property in the mortgage plaintiff received on the $38,000 bonds a sum more than sufficient to pay the judgment against the railroad company on the note described in the complaint with the interest thereon. The demurrers to these pleas were properly overruled.

[13] Pleas 20, 21, 23, and 24 are defective and insufficient. They aver, in substance, that the note was foreclosed, or coercive measures were taken to collect the note before the expiration of a reasonable time from the date of the contract, without giving defendant an opportunity to say whether it should be or not. C. W. Garrett reserved no right in the contract to say when the suit should be filed on the note. He reserved the right in the contract to say when the mortgage shall be foreclosed. The contract was

executed January 15, 1910, suit on the note was filed and judgment obtained against the railroad company in 1916, and the mortgage was foreclosed in 1917. It was more than six years after the execution of the contract before coercive measures were taken to collect the debt. This was more than a reasonable time for the defendant to state whether the mortgage should be foreclosed. Actions founded on a promise in writing not under seal must be commenced within six years under the statute. Section 4835, Code 1907. Demurrers to each of these pleas should have been sustained. Cotton v. Cotton, 75 Ala. 345; Erswell v. Ford, 205 Ala. 494, 88 South. 429; Dowling-Martin Grocery Co. v. Lysle Milling Co., 203 Ala. 491, 83 South. 486.

[14] Pleas 29a and 31a aver, in substance, that the note for $12,635 was reduced to judgment by plaintiff against the railroad company; a certificate of the judgment was recorded in the probate office of Lowndes county; a bill was filed by plaintiff to foreclose the mortgage and to enforce the judgment lien on the property of the railroad company; the judgment was a lien on some property of the railroad company not included in the mortgage, and a second lien on the property in the mortgage; that plaintiff caused all of the property of the railroad company to be sold under the decree of the court for a lump sum, and "thereby made it impossible to tell what amount, if any, is still due on the said judgment, wherefore, the defendant says that the plaintiff is estopped from asserting that there is any balance due on said judgment." Neither the complaint nor the pleas aver any person other than plaintiff owns any bond secured by the railroad mortgage. Hence the $38,000 bonds, the mortgage securing them, and the judgment lien, as between plaintiff and this defendant under the conditions of the contract, secure one debt, and that is the judgment note debt. The defendant was not a party to that foreclosure suit. This defendant is not interested in whether the lump sum from the combined sale of all the property under the mortgage and judgment lien is credited on the $38,000 bonds purchased by plaintiff at collateral sale, or is credited on the judgment lien, or what proportion of it is credited on each. That matter is for the plaintiff and the railroad company to settle. It is not involved in this suit on the contract. This defendant is interested, under the guaranty contract, only in seeing that plaintiff received, or should have received, on the $38,000 bonds and the judgment lien from the foreclosure sale of the entire property, a sum sufficient in amount to pay the judgment lien debt, interest, and cost. When plaintiff from the sale received, or should have received, such an amount, there is no loss to plaintiff under defendant's guaranty contract, and de-

fendant's liability ends. This defendant under the guaranty contract is not interested in where the credits shall be placed. This defendant's testator guaranteed in his contract that the mortgage when foreclosed would bring a sum sufficient to pay the note, debt, and if it did not, and the balance could not be collected out of the railroad company by due diligence, that he would pay one-half of it. The pleas do not aver what the property brought at the sale. Hence the pleas are defective in failing to aver that the money from the lump sum sale under the mortgage and judgment, received by the plaintiff, was an amount at least equal to the amount of the judgment, interest, and cost of court. The pleas fail to state what, if any, amount was received by the plaintiff from the sale. The pleas are defective in failing to state the amount the property sold for at the sale. No facts are averred showing any necessity for a separate sale of the property described in the mortgage from the other property of the railroad company under the judgment lien, as between plaintiff and defendant under their contract set out in the complaint. The demurrers to these pleas 29a, and 31a should have been sustained.

[15] Pleas 32a and 34 aver that plaintiff failed to present to defendant, and failed to file with the judge of probate of the county where letters testamentary were granted for the administration of the estate, this claim or a statement of it in the form and within the time required by law. The complaint avers that a statement of the claim duly verified was filed in the office of the judge of probate in the county where the letters testamentary had been granted within the time allowed by law. This court on former appeal held that averment was as a matter of pleading sufficient. This complaint contains that averment. There is a general issue plea on file. This placed the burden of proving it on the plaintiff as averred in the complaint. This made pleas to that effect unnecessary. Hence the demurrers to these pleas on the ground the matter alleged was included in the general issue under the averments of the complaint should have been sustained.

For the errors mentioned the case is reversed and remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.

McCLELLAN, J., concurs as indicated by separate opinion.

SAYRE and SOMERVILLE, JJ., concur in result.

McCLELLAN, J. (concurring specially). W. P. Russell and C. W. Garrett, both since deceased, were the joint payees in a note made by the Hayneville & Montgomery Rail-

road Company on February 4, 1909, payable on or before January 1, 1910, for $12,635. This note was secured by 38 bonds of the railway company, and these bonds were secured by a *first mortgage* on the railway company's property.

On January 15, 1910—15 days *after the maturity* of the note to Russell and Garrett—Garrett, for a consideration representing his one-half of the face of the note, assigned or transferred to Russell his half interest in the debt, executing to Russell the writing set out in count 2 and reproduced in the foregoing opinion of Justice Miller. In legal contemplation this obligation was a contract of *indemnity*, not a contract of *guaranty*, as was held, erroneously in my opinion, on the former appeal, reported in 204 Ala. 98, 85 South. 420; 14 R. C. L. p. 43; 22 Cyc. p. 79. There is an important distinction between an *indemnity* and a *guaranty*. An *indemnity* is an original contract, while a *guaranty* is a collateral undertaking. 14 R. C. L. p. 44; Anderson v. Spence, 72 Ind. 315, 37 Am. Rep. 162, 167. The importance of this distinction is illustrated in the contest under review. Justice Miller's opinion *ante* accepts the definition on former appeal of the contract's nature; hence the writer dissents from that feature of the present opinion.

The essence and plainly intended effect of the indemnitor's (Garrett's) contractual obligation being to assure the indemnitee (Russell) against *loss*, a condition precedent to the creation of a cause of action resulting from this contract of indemnity was that the indemnitee should have suffered *loss* in a definite amount, not exceeding $6,902.94. Under this contract, the ascertainment of that *loss*—its measure not exceeding the amount stated—was the failure to collect the railway's debt after due, legal diligence and seasonable recourse, in good faith, to every element of security for the payment of the note. In order to construct a sufficient count either on this contractual *promise* of the indemnitor or for breach of the contract, the indemnitee's obligation was to aver performance, in good faith, of every duty essential, as stated, to the creation of the *condition precedent* to the existence of a cause of action in favor of the indemnitee under this contract. Count 2 was not framed on the correct theory of the nature of the contract to which the indemnitee's (plaintiff's) right is referable; and the count would be defective when assailed by aptly grounded demurrer.

The provision in the writing set out in count 2, reserving in the indemnitor the right "to say when" the "note" should be "foreclosed," was a limitation or restriction in favor of the indemnitor that expired after a *reasonable time* from the date of the contract, as was well decided in the opinion on former appeal; such reasonable period having expired by the time the indemnitee began his effort to collect the note. The indicated

provision did not qualify (otherwise than through the reservation of the stated limitation or restriction that expired after a reasonable time) the indemnitee's duty to employ due diligence to collect the note and to enforce, in good faith, every element of the security given for its payment. According to the writer's view, the consideration of the sufficiency of certain special pleas (for instance, plea 17), on demurrer, is embarrassed by the fact that the contract in question was erroneously treated on former appeal as a contract of *guaranty*, rather than as a contract of *indemnity* against *loss*. A result of the erroneous treatment of the contract as one of *guaranty* was to place the burden of averment upon the defendant, indemnitor, to impeach the action of the indemnitee wherefrom under this contract the *loss* of the indemnitee should be ascertained and indemnitor's liability established. Notwithstanding the embarrassment consequent upon the misapprehension of the nature of this contract, effecting improperly to transpose the indicated burden of allegation from the plaintiff to the defendant, plea 17 asserted a bar to plaintff's right to recover, for that it set up the indemnitee's failure to discharge his stated duty in the premises wherefrom the extent of the indemnity against the loss was ascertainable under the indemnitor's contract, in this, that indemnitor did not discharge his legal duty to avail of the security afforded by the first mortgage by which the 38 bonds of the railway company were secured. The indemnitee appears to have foreclosed the collateral afforded by the bonds by their sale under the statutes governing the subjection of *pledges*. Doubtless this foreclosure of the pledge through the sale of the bonds was a full observance of the contract between the railway company and its creditor, and operated, as between those parties, to invest the purchasing creditor (Russell) with the title to the bonds and the mortgage as an incident to the bonded debt thereby secured. But, as Justice Miller well observes, this action is not between those parties. It is between an indemnitee and an indemnitor, the latter's liability being limited, affirmatively restricted, to a *loss* suffered after due diligence to collect the debt, with seasonable recourse to all elements of the debt's security.

Assuming the entire validity and efficacy of the sale of the pledge to pass title to the bonds, *as between the debtor and the foreclosing creditor*, this indemnitee's obligation to the indemnitor was not discharged by a sale of the *pledge*, the bonds to which the mortgage was an incident, If choice this indemnitee had between sale of the pledge and subsequent foreclosure of the mortgage, good faith required that the indemnitee exercise it to the avoidance of a *loss* in the premises, unless some fact or circumstance, not now indicated, forbade his foreclosure

of the mortgage. Indeed, if the indemnitee became the purchaser at the foreclosure of the *pledge* afforded by the bonds (secured by the mortgage), and thereby became possessed of the title to the mortgage, he could not, in good faith, assert a loss as ascertained by the sale price of the pledge only. To affirm otherwise would sanction an only *partial* discharge of the obligation the indemnitee owed the indemnitor in the premises. And if, after the purchase of the *pledge*, the indemnitee foreclosed the mortgage for a sum sufficient to equal the amount the indemnitor agreed to assure, the indemnitee sustained no *loss* within the contemplation of the contract of *indemnity*. This conclusion is not predicated of *fraud* on the part of the indemnitee, but upon the failure of the indemnitee to pursue in the premises the course he had obligated himself primarily to pursue, to ascertain the *loss* against which the indemnitor assured.

In the present posture of the case, I concur in the reversal of the judgment for the erroneous overruling of the demurrers to special pleas 20–24, inclusive—this on the grounds stated in the opinion of Justice Miller.

SAYRE, J. (concurring and dissenting). The learning on the subject of the difference between guaranties and indemnities has not been overlooked on this or the former appeal. The contract certainly guaranteed the collectibility of the note. 1 Brandt, Suretyship and Guaranty, § 111; Stearns' Law of Suretyship, p. 74; McMurray v. Noyes, 72 N. Y. 524, 28 Am. Rep. 180. "Guaranty is distinguished from warranty, although they have many corresponding features. They are both collateral contracts" (20 Cyc. 1403), if that has anything to do with the case. I concur in the reversal, but dissent from the prevailing interpretation of the contract and from the rulings on the two classes of pleas represented by plea 17 and plea 7*a*.